ROSS A. ANDERSON v.
HOWARD LUITJENS AND OTHERS.
CHARLES J. DENKER, INDIVIDUALLY AND d.b.a.
CHUCK'S TAVERN, RESPONDENT.

247 N. W. 2d 913.

December 3, 1976—Nos. 46369, 46370, 46371.

*Gregory P. Joseph* and *James R. Schwebel,* for appellants Anderson.

*Winter, Lundquist, Sherwood & Athens* and *Marvin E. Lundquist,* for appellants Luitjens and Johnson.

*Murnane, Murnane, Conlin & White* and *Lance B. Nyberg,* for appellant Pettit.

*Erickson, Zierke, Kuderer, Utermarck & McKenna, Elton A. Kuderer,* and *Gregory P. Huwe,* for respondent.

Considered and decided by the court en banc.

SHERAN, CHIEF JUSTICE.

Plaintiffs, Ross A. Anderson and Gordon B. Anderson, and defendants Howard Luitjens and Wendy Jean Johnson and Thomas Edward Pettit appeal from an order of the District Court of Nobles County granting defendant Charles J. Denker's motion to dismiss plaintiffs' complaint against Denker for lack of personal jurisdiction. We reverse.

About 11:30 p.m. on September 30, 1972, plaintiff Ross Anderson was injured in a two-car automobile accident which occurred in Nobles County, Minnesota, about 3 miles north of the Iowa line. Anderson was a passenger in a car owned by defendant Luitjens and driven by defendant Johnson. The other car was driven by defendant Pettit.

Prior to the accident, defendant Johnson, who was 17 at the time, had been served alcoholic beverages at defendant Denker's tavern in Lake Park, Iowa, which is 3 miles south of the Iowa-Minnesota line and about 10 miles distant from the site of the accident. As a result of the accident, plaintiffs commenced a civil action against all four named defendants. As part of their response to the action, defendants Luitjens and Johnson cross-claimed for contribution or indemnity against Pettit and Denker, who does business as Chuck's Tavern. Pettit cross-claimed for contribution or indemnity against the other defendants. Denker, in turn, moved to dismiss the action against him on the grounds, as held by the district court, that personal jurisdiction over him had not been obtained.

Plaintiffs' complaint alleged that Ms. Johnson became intoxicated at the tavern, that she was served additional liquor while intoxicated, and that the accident resulted, at least in part, from her intoxication. Iowa law prohibits the sale of liquor to a minor (Iowa Code §§ 123.47, 123.49 [2h] [1975]) and to intoxicated persons (Iowa Code § 123.49 [1] [1975]). The issue on appeal is whether Denker, the Iowa tavern keeper, ought to be subject to the in personam long-arm jurisdiction of a Minnesota court.

Minn. St. 543.19 provides in pertinent part:

"Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any * * * non-resident individual * * * in the same manner as if * * * he were a resident of this state. This section applies if, in person * * *, the * * * non-resident individual:

* * * * *

"(c) Commits any tort in Minnesota causing injury or property damage * * *."

Appellants argue that a tort was committed, in Minnesota, and that there are sufficient "minimum contacts" between defendant Denker and the state to justify the assertion of jurisdiction.

We believe that a tort was committed. Denker's alleged conduct, if proved, would be wrong and tortious because Iowa law makes it so. See, Iowa Code §§ 123.47, 123.49 (1975). As we stated in State ex rel. Nelson v. Nelson, 298 Minn. 438, 441, 216 N. W. 2d 140, 143 (1974), construing the meaning of the word "tort" as contained in § 543.19, subd. 1 (c):

"* * * The doing of an act prohibited by law or the neglect to perform a duty imposed by law, resulting in damages to another, creates a legal liability * * * and may be denominated a tort within the scope of the long-arm statute."

Since Denker's alleged action in serving liquor to Ms. Johnson involved the apparent violation of two different Iowa statutes,

the test of Nelson was met, and we are satisfied that a tort was committed.[1]

We also believe that the tort was committed in Minnesota. The district court felt otherwise, and based its conclusion on the fact that Minn. St. 303.13, subd. 1(3), the corporate long-arm statute, contains language referring to a tort committed "in whole or in part in Minnesota," whereas § 543.19, subd. 1(c), refers only to a foreign corporation or nonresident individual who "commits any tort in Minnesota." In the district court's view, § 543.19, subd. 1(c), could not apply here because § 543.19 requires an *act*, not just an injury, that occurs in Minnesota, and defendant Denker committed no act in this state.

This view of the matter is persuasive, but not conclusive. In Hunt v. Nevada State Bank, 285 Minn. 77, 172 N. W. 2d 292 (1969), certiorari denied sub nom. Burke v. Hunt, 397 U. S. 1010, 90 S. Ct. 1239, 25 L. ed. 2d 423 (1970), we stated that § 543.19 was enacted "to afford maximum protection to this state's residents injured by acts of nonresidents" and that the legislature's basic interest was "to extend the extraterritorial jurisdiction of our courts to the maximum limits consistent with constitutional limitations." 285 Minn. 96, 172 N. W. 2d 304. The district court's view of the differences between § 303.13 and § 543.19 controverts the above-quoted passages from Hunt.

Our view of the matter is supported by prior Minnesota decisions and by the Restatement, Conflict of Laws 2d. The test for whether or not a tort has occurred "in Minnesota" for purposes of long-arm jurisdiction is whether damage from the alleged tortious conduct resulted in Minnesota. If the injury or the damage occurred here, jurisdiction has followed in cases where minimum contacts have been shown despite the fact that the tortious activity occurred elsewhere. Atkins v. Jones & Laughlin Steel Corp. 258 Minn. 571, 104 N. W. 2d 888 (1960); Adamek v.

---

[1] Dramshop Act violations give rise to a cause of action properly and traditionally sounding in tort. Dahl v. Northwestern Nat. Bank, 265 Minn. 216, 121 N. W. 2d 321 (1963).

Michigan Door Co. 260 Minn. 54, 108 N. W. 2d 607 (1961); Casperson v. Board of Regents of University of Minn. 272 Minn. 210, 137 N. W. 2d 194 (1965); Hunt v. Nevada State Bank, *supra*. As we noted in Mid-Continent Freight Lines, Inc. v. Highway Trailer Industries, Inc. 291 Minn. 251, 190 N. W. 2d 670 (1971), §§ 303.13 and 543.19—

"* * * were enacted primarily for the protection of residents of this state, and the legislature, to that end, intended to extend jurisdiction of this state's courts over foreign corporations *and other nonresident defendants* to the maximum limits consistent with due process safeguards." (Italics supplied.) 291 Minn. 254, 190 N. W. 2d 673.

Furthermore, Restatement, Conflict of Laws 2d, § 37, refers to jurisdiction over a nonresident individual who "causes effects in the state by an act done elsewhere" and indicates that jurisdiction over such an individual is proper "unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable." See, International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. ed. 95 (1945). Restatement, Conflict of Laws 2d, § 50, refers to foreign corporations whose acts done outside the state cause effects within the state, and the comment to this section indicates that the rule for foreign corporations is the same as the rule for nonresident individuals. The Restatement approach coincides with our view that Minn. St. 303.13 and 543.19 ought to be similarly interpreted and construed to the extent that it is reasonably possible to do so.

The major remaining question is whether there are sufficient "minimum contacts" to justify the exercise of jurisdiction by Minnesota courts over defendant Denker. Five main factors guide our resolution of this question. They are: (1) Quantity of defendant Denker's contacts with Minnesota; (2) nature and quality of those contacts; (3) source and connection of cause of

action with the contacts; (4) interest of the state in providing a forum; and (5) convenience of the parties.[2]

The main tangible contact of defendant Denker with Minnesota results from the estimation by Denker in his affidavit in support of his motion to dismiss that only 8 percent of his business consists of sales to Minnesota residents. This contact is not as insignificant as it might initially appear. In Hunt v. Nevada State Bank, *supra,* four nonresident individual defendants were among those sued by the plaintiff for fraudulent conversion of an insurance company's assets. Jurisdiction over the nonresident individuals was obtained pursuant to § 543.19, subd. 1(c). The court in Hunt found the assertion of jurisdiction inoffensive because the defendants, through actions performed both in and outside the state, had intentionally set in motion events whose inescapable effect was to injure Minnesotans. 285 Minn. 112, 172 N. W. 2d 312. Similarly here, defendant Denker or his employees can be viewed as having set in motion a chain of events which led directly to plaintiffs' injuries. It is alleged that Ms. Johnson was a minor, that she was served alcoholic beverages at Denker's tavern, that she became intoxicated, that she was served liquor in that state, and that her intoxication was a proximate cause of the accident.[3] If exercise of jurisdiction was inoffensive in Hunt, it would seem acceptable here.

As for the source and connection of the cause of action with the contacts, it is important to bear in mind that at the time of this accident the legal age in Iowa was 19, but the legal age in Minnesota was still 21.[4] This difference was bound to attract

---

[2] These factors are set out in Franklin Mfg. Co. v. Union Pacific R. Co. 297 Minn. 181, 210 N. W. 2d 227 (1973).

[3] For purposes of this appeal, allegations in the complaint are taken as true. Hunt v. Nevada State Bank, 285 Minn. 77, 82, 172 N. W. 2d 292, 296 (1969).

[4] Iowa Code § 599.1 (1971) was amended in April 1972, changing the legal age in Iowa from 21 to 19. Iowa Acts (64 G. A. 1972) c. 1027, § 49. The legal age in Minnesota was not reduced from 21 to 18 until May 1973. See, Minn. St. 645.45(3), and L. 1973, c. 725, § 83(3). Iowa's legal age today is 18. Iowa Code § 599.1 (1975).

young Minnesotans to Iowa's nearby establishments. From this it appears that a sufficiently large percentage of Denker's patrons were Minnesota residents for it to have been reasonable for him to foresee both that serving alcoholic beverages to a minor or to a person already intoxicated might lead to consequences such as those which resulted here and that those consequences might occur in Minnesota.[5]

Since plaintiffs are Minnesota residents, this state has a strong interest in providing a forum. In Mid-Continent Freight Lines, Inc. v. Highway Trailer Industries, Inc. 291 Minn. 251, 256, 190 N. W. 2d 670, 674 (1971), this court wrote:

"* * * Had it been plaintiff, a Minnesota resident, which commenced the action against Hutchens, we would have little difficulty in holding that our courts have jurisdiction over Hutchens, because in such a case we would have a clear interest in providing a forum for the action."

Accord, Rintala v. Shoemaker, 362 F. Supp. 1044 (D. C. Minn. 1973); Savchuk v. Rush, 245 N. W. 2d 624 (Minn. 1976). Moreover, no special inconvenience to Denker would result from requiring him to defend this action in Nobles County, Minnesota. Denker lives in Lake Park, Iowa, which is only about 23 miles from Worthington, Minnesota, where this case is venued. Beyond this, Minnesota is the only forum in which all named parties can

---

[5] In Ehlers v. U. S. Heating & Cooling Mfg. Co. 267 Minn. 56, 124 N. W. 2d 824 (1963), a foreign corporation was held amenable to long-arm jurisdiction under § 303.13, subd. 1(3), when a furnace it had manufactured in Ohio caused damage in Minnesota. Jurisdiction was asserted even though the contact of the corporation with the state was limited to the sale and manufacture of a mass-production unit which came to Minnesota as a result of ordinary marketing processes. That damage might occur in Minnesota from the negligent manufacture of a furnace was held by the court in Ehlers to be reasonably foreseeable. In light of what we said earlier about the appropriateness of similarly interpreting §§ 303.13 and 543.19, the finding of a sufficient degree of reasonable foreseeability in Ehlers seems to suggest that foreseeability sufficient to justify long-arm jurisdiction is likewise present here.

have their rights adjudicated at the same time, a factor considered significant in the Hunt case.[6] In balancing the relative convenience or hardship of the parties, it seems clear that the hardship the Minnesota parties to this action would suffer from denial of jurisdiction would be more severe than any inconvenience Mr. Denker and his insurance carrier would be caused by requiring him to defend in Minnesota.[7] We therefore conclude, and hold, that the facts of this case present sufficient minimum contacts with the State of Minnesota to justify the exercise of state court in personam jurisdiction over defendant Denker pursuant to Minn. St. 543.19.

In addition to the reasons already set forth, our decision is strengthened by reference to Young v. Gilbert, 121 N. J. Super. 78, 296 A. 2d 87 (1972). In that case, two young men, residents of New Jersey, went on a drinking spree in a New York border town. Late at night they returned to New Jersey, thoroughly intoxicated, and were involved in a two-car accident. In a resulting lawsuit, the New Jersey Superior Court held that the plaintiffs could obtain in personam long-arm jurisdiction over the New York bowling alley-bar that had served the young men the intoxicants. In reaching its decision, the New Jersey court was able

---

[6] The statute of limitations on this action appears to have run in Iowa. See, Iowa Code § 614.1(2) (1975).

[7] The quantity and quality of defendant's contacts with the state and the connection of those contacts with the cause of action are the primary factors to consider. Aftanase v. Economy Baler Co. 343 F. 2d 187, 197 (8 Cir. 1965). However, "* * * [o]nce it is established that the defendant's actions within the forum State are of the requisite 'quality and nature' and the cause of action is sufficiently connected with this activity * * * 'the propriety of an assumption of jurisdiction depends upon a balancing of the inconvenience to the defendant in having to defend itself in the forum state against both the interest of the plaintiff in suing locally and the interrelated interest of the state in assuming jurisdiction.'" Krasne's Inc. v. Sterling Arms Corp. 47 A. D. 2d 130, 133, 365 N. Y. S. 2d 575, 579 (1975), quoting Buckeye Boiler Co. v. Superior Court, 71 Cal. 2d 893, 899, 80 Cal. Rptr. 113, 118, 458 P. 2d 57, 62 (1969).

to point to certain specific contacts between the bowling alley and New Jersey: The alley purchased some of its supplies in New Jersey; the alley's employees' and officers' life insurance carrier was a New Jersey company.

But the holding of the court in Young v. Gilbert, *supra,* did not depend on these contacts. To quote from the opinion (121 N. J. Super. 86, 296 A. 2d 91):

"* * * While such 'contacts' in themselves may be insufficient for New Jersey to exercise jurisdiction in respect of the nonrelated cause of action, based upon long-arm service, in this case * * * there do exist compelling reasons for holding this defendant King Pin Alleys, amenable to suit here on the claim set forth against it in the amended complaint.

"There clearly is no special inconvenience to this defendant, since New Jersey and New York are contiguous, King Pin Alleys' single business location being no more than seven miles from the New Jersey State line. Its management had on occasion observed New Jersey cars parked in its parking lot, but maintains that the business is dependent on local trade. On the other hand, the difference in the minimum age requirements for service of alcoholic beverages in New York and New Jersey has long been a matter of common knowledge, sales being prohibited to minors under 18 in New York and under 21 in New Jersey. * * * In this context should be noted the observations of defendant Zimmerman that on the night of the accident there were about 30 people in the cocktail lounge, that their approximate age group was 'Seventeen through twenty,' and that about half of them were from the Bergenfield, New Jersey, area. Plaintiffs are, on the motion now before the court, 'entitled to the benefit of every favorable inference of fact.' * * * Assuming, therefore, as the amended complaint alleges, that King Pin Alleys unlawfully and negligently sold alcoholic beverages to Zimmerman causing his intoxication, which in turn caused or contributed to his negligent operation of Finland's car which he was driving at the time of the accident, a jury could reasonably find not only

that plaintiffs' injuries resulted in the ordinary course of events from Zimmerman's negligence and that such negligence was a substantial factor in bringing about such injuries, but additionally, that Zimmerman's negligent operation of the car while driving home after leaving King Pin Alleys in an intoxicated state was an event which King Pin Alleys, under all of the circumstances, could reasonably have foreseen. * * * The dangerous effects of Zimmerman's driving while intoxicated, which actually occurred on a two-lane roadway in New Jersey while he was on his way home from the drinking spree in the King Pin Alleys' cocktail lounge, could easily have been anticipated. Accordingly, regardless of any other relationship of defendant King Pin Alleys to this State, I am convinced that permitting plaintiffs to maintain this suit against this defendant in this court does not offend 'traditional notions of fair play and substantial justice.' "

While we do not subscribe to the implicit departure of Young v. Gilbert, *supra,* from the five-factor test for long-arm jurisdiction as identified in Aftanase v. Economy Baler Co. 343 F. 2d 187 (8 Cir. 1965), and Franklin Mfg. Co. v. Union Pacific R. Co. 297 Minn. 181, 210 N. W. 2d 227 (1973), we do otherwise find the reasoning of the court in that case persuasive on these facts. To it we add only this: Under traditional concepts of territoriality and proper jurisdiction, Minnesota courts would not have been able to entertain this case. But with the adoption of long-arm statutes such as those passed in Minnesota, thinking on the territoriality of law has given way to new jurisdictional ideas which, in our view, make the assertion of jurisdiction in this case consistent with traditional notions of fair play and substantial justice.

For the reasons stated in this opinion, the judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.[8]

Reversed and remanded.

---

[8] Respondent argues that the effect of our decision will be to require a Minnesota court to enforce Iowa's dramshop law. We disagree. Our

opinion addresses only the jurisdictional issue. The separate question of what law applies, now that jurisdiction has been found proper, has not been decided by either this court or the district court, and on this question we intimate no views.