Lisa BLAMEY, a minor, by her mother and natural guardian, Shirley Blamey, Respondent,

v.

Thorwald BROWN, a/k/a Ted Brown, Ted Brown's Bar and Overshoe Club, Appellant.

No. 47917.

Supreme Court of Minnesota.

Sept. 1, 1978.

Rehearing Denied Nov. 3, 1978.

 

Lindquist & Vennum and Norman L. Newhall, and Harry C. Piper, III, Wright, Roe & Schmidt, Minneapolis, for appellant.

Geraghty, O'Loughlin & Kenney and Robert M. Mahoney, St. Paul, for respondents.

Heard before YETKA, SCOTT and WAHL, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal by defendant Thorwald Brown from an order of the district court denying defendant's motions for dismissal and summary judgment and granting plaintiff Lisa Blamey's motion to strike *inter alia* defendant's defense of lack of personal jurisdiction. The district court also certified a choice of law issue as being important and doubtful pursuant to Rule 103.03(i) of the Rules of Civil Appellate Procedure. We affirm the district court's decision of the jurisdictional issue and remand for proceedings consistent with this opinion.

On the evening of October 23, 1974, plaintiff Lisa Blamey, a 15-year-old, attended a beer party in the Twin Cities area given by Patrick Michael (Mike) Martin, a 17-year-old. The party broke up at about 11 p. m. after the beer supply had been exhausted. A group from the party, including plaintiff, got into Martin's sister's car and Martin decided that they should go to Wisconsin since liquor stores in the Twin Cities had closed by that time. He said he knew of a place in Wisconsin where beer could be obtained at that hour.

Accompanied by the plaintiff, Martin drove the car to Hudson, Wisconsin, where he purchased two twelve packs of strong beer at the Overshoe Club at approximately 1 a. m. At about 4 a. m., the car was involved in a one-car accident in Minnesota in which plaintiff was seriously injured.

At the time of the accident, plaintiff and Martin were residents of Minnesota. The Overshoe Club, also known as Ted Brown's Liquors, operated under a Class B liquor license issued by the city of Hudson, Wisconsin. The establishment was solely

owned by defendant Thorwald Brown, then a Wisconsin resident, who has resided in Arizona since 1976.

The Overshoe Club sold intoxicating liquor and fermented malt beverages both on- and off-sale. The Club is located just off Interstate 94, within 15 miles of the Twin Cities area and is one of the first liquor establishments one reaches after exiting from the Interstate. It is located on the main street of Hudson, Wisconsin. Hudson is located on the Minnesota-Wisconsin border and the Twin Cities and Hudson are connected by the Interstate highway.

The Club is a neighborhood bar with no live entertainment, juke box, or game machines. The facility, which consists of a bar and three tables, could accommodate about 20 people. Defendant neither advertised in Minnesota nor attempted to attract Minnesota residents or young people to his establishment. He had no business connections in Minnesota and purchased the entire inventory for the bar in Wisconsin. Since defendant did not operate his establishment in Minnesota or any other state which had a similar civil damage act, Brown had not procured liquor liability insurance.

Plaintiff brought the present action in Minnesota district court, alleging that defendant or his employees sold intoxicating liquors to Martin, a minor, in violation of, *inter alia,* the Minnesota Civil Damage Act, Minn.St. 340.95, and the Minnesota common law of negligence. The complaint was claimed to have been served pursuant to Minnesota's long-arm statute, Minn.St. 543.-19, subd. 1(c). Defendant's answer included an allegation that the Minnesota district court lacked personal jurisdiction over the defendant and plaintiff moved to strike this defense. Defendant also sought an order to dismiss the complaint on jurisdictional grounds and summary judgment. The district court granted plaintiff's motion to strike the jurisdictional defense and denied defendant's motions.

On appeal, defendant raises the issue of whether the Minnesota district court erred

in holding that it had personal jurisdiction over him. The district court also certified the following issue to us as being important and doubtful pursuant to Rule 103.03(i) of the Rules of Civil Appellate Procedure: "Whether Minnesota's Civil Damage Act can be applied to impose liability on a Wisconsin bar owner for an illegal sale of intoxicating liquors allegedly made at his place of business in Wisconsin." The only issues on appeal then are the jurisdictional and choice of law issues.

■ 1. To establish personal jurisdiction over a nonresident defendant, it must be shown that such is authorized by the terms of a statute and is consistent with the due process guarantees of the constitution. *All Lease Co., Inc. v. Betts,* 294 Minn. 473, 199 N.W.2d 821 (1972). The statute under which plaintiff claims personal jurisdiction is Minn.St. 543.19, subd. 1(c), which provides in part:

" * * * As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any * * * non-resident individual * * * in the same manner as if * * * he were a resident of this state. This section applies if * * * the * * * non-resident individual:

\* \* \* \* \* \*

"(c) Commits any tort in Minnesota causing injury or property damage * * *."

Defendant contends that subdivision 1(d) and not 1(c) governs the present action. Subdivision 1(d) allows the exercise of personal jurisdiction over a nonresident if he:

"(d) Commits any tort outside of Minnesota causing injury or property damage within Minnesota, if, (1) at the time of the injury, solicitation or service activities were carried on within Minnesota by or on behalf of the defendant, or (2) products, materials or things processed, serviced or manufactured by the defendant

were used or consumed within Minnesota in the ordinary course of trade."[1]

The constitutional due process standards applicable to this case are contained in *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8 Cir. 1965), and *Franklin Mfg. Co. v. Union Pacific R. Co.*, 297 Minn. 181, 210 N.W.2d 227 (1973). See, also, *Kulko v. Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). According to these decisions, the following criteria are to be applied when ascertaining whether jurisdiction over the person complies with due process: (1) The quantity of contacts with the forum state, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action with those contacts, (4) the interest of the forum state in providing a forum, and (5) the convenience of the parties. Defendant contends that these factors when applied to the present situation mandate a finding of no personal jurisdiction in Minnesota.

Both the statutory and the constitutional issues relating to jurisdiction can be resolved on the basis of our recent decision in *Anderson v. Luitjens*, Minn., 247 N.W.2d 913 (1976), the facts of which closely parallel the facts of the case at hand. In *Anderson*, plaintiff Ross Anderson was injured in an automobile accident which occurred in Minnesota approximately 3 miles north of the Minnesota-Iowa border. Anderson was a passenger in the car owned by Luitjens and driven by Wendy Johnson. Prior to the accident, 17-year-old Johnson had been served alcoholic beverages at defendant Charles Denker's tavern in Lake Park, Iowa. Lake Park is about 3 miles south of the state border line and about 10 miles from the accident site.

Anderson brought an action against Denker and others in Minnesota district court. That court ruled that Denker was

not subject to in personam long-arm jurisdiction of a Minnesota court. In reversing the district court, we stated: ·

" * * * Under traditional concepts of territoriality and proper jurisdiction, Minnesota courts would not have been able to entertain this case. But with the adoption of long-arm statutes such as those passed in Minnesota, thinking on the territoriality of law has given way to new jurisdictional ideas which, in our view, make the assertion of jurisdiction in this case consistent with traditional notions of fair play and substantial justice." Minn., 247 N.W.2d 918.

In reaching this decision, we held that Minn.St. 543.19, subd. 1(c), was applicable to the facts of the case, stating that the test for whether or not a tort has occurred "in Minnesota" depends on whether damage from the alleged tortious conduct resulted in Minnesota. In the present case, defendant does not dispute that the injury to the plaintiff occurred in Minnesota and has presented no compelling argument why section 1(c) of Minn.St. 543.19 should not govern the present situation. We thus find no reason to abandon the principles set forth in *Anderson* on this point, and hold that section 1(c), and not 1(d), is applicable to this case.

In *Anderson*, we then considered the due process aspects of the case and applied the five criteria set forth in *Aftanase v. Economy Baler Co.*, supra, and *Franklin Mfg. Co. v. Union Pacific R. Co.*, supra. As to the first criterion, the quantity of the contacts, we noted that Denker's main tangible contact with Minnesota was the fact that, according to Denker's own estimate, 8 percent of his business consisted of sales to Minnesota residents. Unlike Denker, the defendant herein has admitted no specific percentage of business with Minnesota residents.

1. The Minnesota Legislature recently amended subdivision 1(d) of Minn.St. 543.19 to provide: " * * * (d) Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(1) Minnesota has no substantial interest in providing a forum; or

(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice; or

(3) the cause of action lies in defamation or privacy." L.1978, c. 780, § 2.

He contends that he did not know the residence of each of his customers but does not deny that he did business with Minnesotans. The record, however, shows that defendant's bar and off-sale liquor business was located on the main street of a border town close to an interstate highway. The Wisconsin laws regulating Brown's business allowed him to keep his off-sale enterprise open until 2 a. m., while off-sale liquor establishments located in Minnesota cities of the first class (which includes St. Paul and Minneapolis) and for a radius of 15 miles around such cities were required by Minnesota law to close at 8 p. m.—six hours before defendant was required by Wisconsin law to close.[2] These facts—the proximity to the state border, an interstate highway, and a large urban area and Wisconsin's more liberal liquor regulations—give rise to a reasonable inference that Brown had sufficient contacts with Minnesota residents so that the exercise of jurisdiction is reasonable, even though a specific percentage of business with Minnesotans cannot be identified.

The next factor we considered in *Anderson* was the source and connection of the cause of action with the contacts. We noted that the legal age for drinking alcoholic beverages in Iowa at the time of Anderson's accident was 19, while the legal age in Minnesota was 21. We commented:

"* * * This difference was bound to attract young Minnesotans to Iowa's nearby establishments. From this it appears that a sufficiently large percentage of Denker's patrons were Minnesota residents for it to have been reasonable for him to foresee both that serving alcoholic beverages to a minor or to a person already intoxicated might lead to consequences such as those which resulted here and that those consequences might occur in Minnesota." Minn., 247 N.W.2d 916.

While the parties to the present action agree that the drinking age in both Minnesota and Wisconsin was 18 at the time of the accident, the difference in the hours liquor establishments were allowed to remain open, previously discussed, was bound to attract Minnesota minors to Wisconsin. In fact, in the present case, Martin's knowledge of this situation was the initial reason the group of young people headed to Wisconsin to make their purchase.

The interest of the state in providing a forum was the next standard discussed in *Anderson,* wherein we concluded that Minnesota had a sufficiently strong interest. Minnesota's interest is equally strong in the present case. Plaintiff is a lifelong Minnesota resident, who sustained injuries in Minnesota, resulting in the accumulation of hospital and physicians' bills with Minnesota creditors.

As to the final factor, the convenience of the parties, defendant argues that Minnesota is an inconvenient forum since he is now retired and permanently resides in Arizona. This fact, however, militates against defendant's interests. Since he now lives in Arizona, Wisconsin is not a convenient forum for any of the parties, and it is no more inconvenient for the defendant to participate in a trial in Hennepin County, Minnesota, than it would be for him to participate in a trial in Hudson, Wisconsin, a short distance from Hennepin County across the state border.

■ Consequently, on the basis of *Anderson v. Luitjens, supra,* we are compelled to hold that the district court properly asserted jurisdiction over defendant.

2. Pursuant to Rule 103.03(i) of the Rules of Civil Appellate Procedure, the dis-

2. Minn.St. 340.14, subd. 1, allows "off-sale" sales of intoxicating liquors in cities of the first class and in all cities located within a radius of 15 miles of cities of the first class between the hours of 8 a. m. and 8 p. m. on weekdays, between 8 a. m. and 10 p. m. on Saturdays, and prohibits sales on Sundays. October 23, 1974, was a weekday and thus Minnesota required "off-sale" stores to close by 8 p. m. Holders of

Class B liquor licenses in Hudson, Wisconsin, however, were permitted by City of Hudson Municipal Code § 1301(9)(b) to make "off-sale" sales from 8 a. m. to 2 a. m. the next morning on weekdays and Saturdays and from noon to 2 a. m. on Sundays. Brown's off-sale business was thus allowed to remain open until 2 a. m. on the date of the accident.

trict court certified to us the issue of whether Minnesota's Civil Damage Act, Minn.St. 340.95, can be applied to impose liability on defendant, a Wisconsin bar owner. Minn.St.1974, § 340.95, provides:

"Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained; and all damages recovered by a minor under this section shall be paid either to such minor or to his parent, guardian, or next friend, as the court directs; and all suits for damages under this section shall be by civil action in any court of this state having jurisdiction thereof."

At the time of the accident, Minn.St.1974, § 340.73, made it illegal to sell or give intoxicating liquor to any person under the age of 18. Minnesota's Act thus imposed strict liability upon anyone who sold or gave intoxicating liquor, including the type of beer sold to Martin, to any person under 18.

Wisconsin's civil liability statute, which defendant contends is the applicable law, is more restrictive than Minnesota's Act. Under Wis.St.Ann. 176.35, a person injured as the result of the intoxication of "any minor or habitual drunkard" has a right of action only against any person who has been "notified or requested in writing" by certain relatives of the minor or drunkard or government officials "not to sell or give intoxicating liquors to him and who, notwithstanding such notice or request, shall knowingly sell or give away intoxicating liquors, thereby causing the intoxication of such minor or drunkard." It is undisputed in this case that the notice required by the Wisconsin statute was not given and there-

fore plaintiff may not maintain a cause of action based upon it. See, *Farmers Mutual Auto. Ins. Co. v. Gast,* 17 Wis.2d 344, 117 N.W.2d 347 (1962). Thus, the choice of law in this case is "outcome determinative" since a conflict between the laws of Minnesota and Wisconsin exists. See, *Myers v. Government Employees Ins. Co.,* 302 Minn. 359, 225 N.W.2d 238 (1974).

Defendant argues, however, that it is unnecessary to invoke the choice of law principles since the legislature did not intend the Minnesota Civil Damage Act to impose liability upon a Wisconsin bar owner for an allegedly illegal sale of intoxicating liquor which took place in Wisconsin. Plaintiff asserts that our Act is applicable to "any person" who makes an illegal sale of intoxicating liquor regardless of where that person engages in business.[3] We agree with defendant.

While our Civil Damage Act is silent as to whether or not it imposes liability upon non-Minnesota liquor vendors, it seems only logical that the legislature intended the Act to be applicable only to Minnesota vendors who make illegal sales within Minnesota, and not to out-of-state liquor vendors.

Our Act, Minn.St. 340.95, is only one of over 100 provisions codified in Minn.St. Ch. 340 dealing with intoxicating liquors. The provisions contained in Chapter 340 constitute a comprehensive scheme for regulating Minnesota's liquor industry. Chapter 340 regulates such matters as licensing, retailing, wholesaling, age of consumption, importation, hours and days of sale, advertising, and taxation.

■ When viewed in light of these other provisions of Chapter 340 which regulate the Minnesota liquor industry, it is apparent that our Civil Damage Act was intended to be applicable only to Minnesota vendors. We feel the Minnesota legislature did not intend to impose strict liability under our

**3.** Plaintiff also cites *Schmidt v. Driscoll Hotel, Inc.,* 249 Minn. 376, 82 N.W.2d 365 (1957), for the proposition that our Act has extraterritorial application. In *Schmidt,* the alleged illegal sale took place in Minnesota, resulting in injury to a Minnesota plaintiff in Wisconsin. We held that our Act applied to the Wisconsin injury. Since *Schmidt* did not involve a nonresident seller, it is clearly distinguishable from the case at hand.

Act on Wisconsin bar owners any more than it intended the licensing or taxation provisions of Chapter 340 to be applicable across the state boundary. Consequently, we hold that the Minnesota Civil Damage Act cannot be applied to impose liability on a Wisconsin bar owner for an illegal sale of intoxicating liquor, especially where the sale was made in Wisconsin.[4]

3. Although we have determined that Minnesota's Civil Damage Act is not operative in this case, the issue of whether Minnesota's theory of common-law negligence may be invoked remains. Two cases are relevant to this consideration—*Trail v. Christian,* 298 Minn. 101, 213 N.W.2d 618 (1973), and *Fitzer v. Bloom,* Minn., 253 N.W.2d 395 (1977).

In *Trail, supra,* we held that a common-law negligence action would lie against a commercial vendor who illegally furnished a "nonintoxicating malt beverage" (3.2 beer). We expressly stated in *Trail* that the holding applied only to the illegal sale of 3.2 beer, which is not covered by the Civil Damage Act.

Subsequently, in *Fitzer v. Bloom, supra,* we considered "whether the common-law principles of *Trail* are to be extended into areas already covered by the Civil Damage Act or whether, by enacting the Civil Damage Act, the legislature has preempted the field." After citing *Trail,* we stated:

> "* * * Since the legislature has provided a remedy for the illegal sale of intoxicating liquor in the Civil Damage Act, the legislature has preempted the field and has provided the exclusive remedy in the act. *A common-law cause of action for negligence will only be allowed where the act does not apply.*" Minn., 253 N.W.2d 403. (Italics supplied.)

In the present case, the legislature obviously has not preempted the field since, as was previously resolved, our Act does not apply to a non-resident vendor. In light of our statements in *Fitzer, supra,* we hold that a common-law action for negligence lies in the case at hand since the Civil Damage Act is not applicable.

4. The final issue to be resolved is whether the common law of Minnesota or Wisconsin should be applied. Contrary to Minnesota's limited rule of common-law liability, Wisconsin allows no common-law action. E. g., *Garcia v. Hargrove,* 46 Wis.2d 724, 176 N.W.2d 566 (1970).

The factors to be considered in resolving this conflict were adopted in *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973). The approach adopted in *Milkovich* was taken from a proposal of Professor Robert Leflar in Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U.L.Rev. 267 (1966), and involves the application of five "choice-influencing considerations": (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law. The third consideration—simplification of the judicial task—has little application to the present situation, since any court is fully capable of administering Wisconsin's rule of non-liability. See, *Milkovich v. Saari, supra.*

Normally, the first consideration—predictability of result—is relatively unimportant in tort cases. *Milkovich v. Saari, supra.* It, however, acquires a greater importance in this case. This factor includes the idea that parties should know the legal consequences of their acts at the time they engage in a transaction. Leflar, Choice-Influencing Considerations in Conflicts Law,

---

**4.** We recognize that by disposing of the issue on grounds of statutory interpretation rather than upon common-law choice of law principles we depart from Professor Robert Leflar's suggestion that "[w]hen a statute is silent as to its extrastate applicability, a court may and should as appropriately look to all the relevant choice-of-law considerations as if it were choosing between common-law rules" rather

than resorting to statutory interpretation. See, Leflar, American Conflicts Law, 229–32 (1968). Although we have adopted Leflar's five "choice-influencing considerations" as our approach to resolving conflict of law questions, we choose not to follow in the present case his suggestion as to when courts may engage in statutory construction, and thus avoid the necessity of invoking the five-factor analysis.

41 N.Y.U.L.Rev. 267, 282 (1966). In the present situation, defendant failed to procure liquor liability insurance since he assumed that only the laws of Wisconsin created his liability. These laws impose no liability upon him in the present case and thus if Minnesota law is applied some injustice will result to the defendant since the legal ramifications of his actions were not predictable to him at the time he acted.

The maintenance-of-interstate-order consideration includes the requirement that the state whose laws are ultimately applied have sufficient contacts with the facts in issue. *Milkovich v. Saari, supra.* Here, Minnesota has strong contacts with the facts. The residence of the plaintiff and her creditors is in Minnesota. Her journey on the night of the accident started in Minnesota and ended here also. Minnesota thus has sufficient contacts with the facts of the case. On the other hand, some ruffling of interstate relations might occur if Wisconsin law is applied and consequently maintenance of interstate order might be affected.

It is clear that Minnesota's governmental interest will be advanced by application of Minnesota law. Minnesota has a strong interest in compensating resident accident victims and a substantial interest in assuring that Minnesota creditors are paid. This consideration therefore strongly favors invoking Minnesota law.

The final consideration—the better rule of law—firmly supports the application of Minnesota's common law. In *Trail v. Christian, supra,* we expressly disapproved of the Wisconsin case, *Garcia v. Hargrove, supra,* which reaffirmed the Wisconsin common-law rule of non-liability. As between Wisconsin's law which provides no remedy and our law which does provide a remedy, we are convinced Minnesota has the better rule of law.

The correlation of these five considerations results in the conclusion that Minnesota's common law should be applied. The only consideration which weighs strongly in defendant's favor is the first—predictability of result. The maintenance-of-interstate-order consideration does not favor one state's law or the other, whereas the considerations of Minnesota's governmental interests and the better rule of law tip the scales in favor of the application of our own common law.

We therefore affirm the district court and remand for proceedings consistent with this opinion.

Affirmed and remanded.

SHERAN, C. J., took no part in the consideration or decision of this case.