Morris THORING, as Personal Representative of the Estate of Patty Jean Thoring, Morris Thoring as the Conservator and Guardian of Shawn Michael Thoring, Plaintiff and Appellee,

v.

Michael J. BOTTONSEK, Defendant,

Earl L. LaCounte and Janice C. LaCounte, d/b/a Lenny's Bar, Bainville, Montana, Defendants and Appellants.

Civ. No. 10555.

Supreme Court of North Dakota.

May 23, 1984.

Bjella, Neff, Rathert, Wahl & Eiken, Williston, for plaintiff and appellee; argued by William M. McKechnie, Williston.

Zuger & Bucklin, Bismarck, for defendants and appellants; argued by Patrick J. Ward, Bismarck, Lyle W. Kirmis, Bismarck, on brief.

PEDERSON, Justice.

This wrongful death action is before us pursuant to Rule 54(b), North Dakota Rules of Civil Procedure.[1] Defendant Lenny's Bar (Lenny's) appeals from the trial court's partial summary judgment and order, wherein the court concluded as a matter of law that it had personal jurisdiction over Lenny's and that North Dakota's dram shop act as codified at § 5–01–06, North Dakota Century Code, can be applied to assess liability against a Montana bar. Lenny's contends that as a matter of law it lacked sufficient minimum contacts with North Dakota for this state to assert personal jurisdiction under the long-arm provisions of Rule 4(b), NDRCivP. Lenny's also asserts that North Dakota's dram shop act has no extraterritorial effect. For the reasons stated below, we conclude that the trial court erred in determining that a Montana bar could be liable under North Dakota's dram shop act and that it is unnecessary for us to address the personal jurisdiction issue.

On the evening of September 19, 1980, Michael J. Bottonsek (Bottonsek) and his brother Patrick drove from Williston, North Dakota, to Bainville, Montana with Patty Jean Thoring and Jolene McGillis, ostensibly to celebrate Miss McGillis's birthday. Bainville is a small town about twenty-four miles from Williston and eight miles west of the North Dakota border. Lenny's is owned and operated by Montana residents Earl L. LaCounte and Janice C. LaCounte. It is located in Bainville and is regulated by Montana's licensing and liquor control laws.

At the time material to this action, Montana's legal drinking age was nineteen and North Dakota's was twenty-one. Both Patty Jean Thoring and Jolene McGillis were under twenty-one on September 19, 1980, when some or all members of the Bottonsek party consumed intoxicating beverages at Lenny's.

Returning from Bainville to Williston in the early morning hours of September 20, 1980, Bottonsek drove his vehicle on the wrong side of a divided highway just outside Williston and collided head-on with a vehicle driven by Harold Nehring. Miss Thoring, Miss McGillis and Mr. Nehring all died from the collision. Morris Thoring (Thoring), as personal representative of Patty Jean Thoring's estate and as conservator and guardian of Patty Jean Thoring's minor son, Shawn Michael Thoring, brought this wrongful death action against Bottonsek and Lenny's.

Thoring's complaint alleged that Lenny's was specifically liable under the North Dakota Civil Damage Act, § 5–01–06, NDCC (dram shop act),[2] as well as under the laws and statutes of Montana and the common law of North Dakota and Montana. Lenny's answer raised several affirmative de-

---

**1.** Rule 54(b) authorizes the trial court to direct the entry of a final judgment as to one or more but fewer than all of the claims presented in an action upon an express determination that there is no just reason for delay.

**2.** The language of § 5–01–06, NDCC, in effect at the time this action was commenced is:
"5–01–06. Recovery of damages resulting from intoxication.—Every wife, child, parent, guardian, employer, or other person who shall be injured in person, property or means of support by any intoxicated person, or in consequence of intoxication, shall have a right of action against any person who shall have caused such intoxication by disposing, selling, bartering, or giving away alcoholic beverages contrary to statute for all damages sustained."

The section was amended by the 1983 Legislative Assembly to correct sex discriminatory language and to make special reference to the damages to which the survivors are entitled if death results. Those changes do not affect the disposition of this appeal.

fenses, among them failure to state a claim and lack of personal jurisdiction. Lenny's then moved for summary judgment on the issue of personal jurisdiction or, in the alternative, for partial summary judgment on the issue of the extraterritorial effect of North Dakota's dram shop act. The trial court ruled against Lenny's on both issues and Lenny's appealed to this court. The record on appeal consists of depositions, affidavits and other supporting documents filed with the motion for summary judgment.

It is important to note that while Montana imposes criminal liability on tavern keepers who violate its liquor control laws, it has no statutory provision that imposes civil liability on tavern keepers for injuries that result from furnishing intoxicating beverages to a minor or to a person who is already intoxicated. The Montana Supreme Court has so far declined to fashion a common law liability for tavern keepers or social hosts in dram shop situations.[3] If we assume that North Dakota has personal jurisdiction over Lenny's, unless our dram shop act has extraterritorial effect, for all intents and purposes Thoring would have no remedy in a North Dakota court. Common law has been superseded by the dram shop act. See § 1–01–06, NDCC. The only way Lenny's could be held liable

would be under Montana common law which can only be created by a Montana court.

Can North Dakota's dram shop act be applied beyond our borders to hold a Montana bar owner liable for injuries to North Dakota residents resulting from an automobile accident that occurred in North Dakota? This court has not previously had the opportunity to consider that question. Other jurisdictions have confronted the problem and we may look to their decisions for guidance.

The federal district court in North Dakota has considered the dram shop act in a conflict-type situation, but the real issue in that case concerned choice of law. See *Trapp v. 4–10 Investment Corporation*, 424 F.2d 1261 (8th Cir.1970). In *Trapp*, a Fargo liquor store sold beer to Minnesota minors. The purchasers and other minors then consumed the beer at a keg party at a Minnesota lake cottage. One of the minors was shortly thereafter involved in an automobile collision in Moorhead, Minnesota. The court concluded that North Dakota would apply its own dram shop act under the facts present in that case and commented that the result would not contravene the interests or policies of Minnesota, which also had a dram shop act. *Id.* at

---

**3.** A Montana federal district court, in the absence of any controlling Montana Supreme Court authority, held that under the particular circumstances of the case before it, the sale and serving of liquor to an Air Force person in violation of Montana law was a proximate cause of the automobile accident and resulting injuries to the plaintiff passenger. *Deeds v. United States,* 306 F.Supp. 348 (D.Mont.1969). More recently, the Montana Supreme Court has ignored, distinguished or chosen not to follow the federal district court's example in *Deeds.* In a wrongful death action against a bar for the death of a 17-year-old girl who drowned in a creek adjacent to a parking lot the court agreed with the bar's contention that the plaintiff could not recover anything because the proximate cause of the girl's death was her voluntary intoxication and failure to exercise due care for her own safety. *Folda v. City of Bozeman,* 177 Mont. 537, 582 P.2d 767 (1978). The deceased patron's contributory negligence in becoming intoxicated was also held to preclude any possible recovery from the bar owners in *Swartzen-*

*berger v. Billings Labor Temple,* 179 Mont. 145, 586 P.2d 712 (1978), although the court apparently left open the possibility that a bar keeper's serving of intoxicating beverages could constitute *negligence per se* under *some* circumstances. In *Runge v. Watts,* 180 Mont. 91, 589 P.2d 145 (1979), the court held that the sanctions for violations of Montana's liquor laws did not create a civil cause of action in favor of third persons injured as a result of a minor having been furnished alcoholic beverages. While it is arguable that the decision in *Runge* is limited to situations where social hosts furnish alcoholic beverages to minors, dicta indicates otherwise. The Montana Supreme Court remarked that its recent holdings (in *Folda* and *Swartzenberger*) affirmed its statement of the law that "the seller of intoxicant is not liable in tort for the reason that his act is not the efficient cause of the damage. The proximate cause is the act of him who imbibes the liquor." *Runge,* 589 P.2d at 147, citing *Nevin v. Carlasco,* 139 Mont. 512, 515–16, 365 P.2d 637, 639 (1961).

1265. Holding a North Dakota liquor store proprietor liable under North Dakota's dram shop act for injuries sustained in an accident occurring in Minnesota, which would also hold the proprietor liable had the sale occurred in that state, differs considerably from the instant case where the sale took place in Montana, a state which would not impose civil liability on the proprietor.

A general discussion on the extraterritorial application of dram shop acts can be found in the annotation at 2 A.L.R.4th 952 (1980). The annotation does not contain any case where one state's dram shop statute has been applied to hold an out-of-state liquor vendor liable absent a dram shop statute or common law liability in the vendor's state. The parties have not cited such a case and our own research has not revealed any.

When the injury or death occurs outside the state of sale, some jurisdictions refuse to impose liability under the dram shop act of the place of sale even when the place of sale is the forum state. Thus Illinois will not give its dram shop act extraterritorial effect when the sale takes place in Illinois but the injuries are sustained outside Illinois. See, *e.g., Waynick v. Chicago's Last Dept. Store*, 269 F.2d 322 (7th Cir.1959), *cert. denied*, 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554 (1960); *Graham v. General U.S. Grant Post No. 2665, V.F.W.*, 43 Ill.2d 1, 248 N.E.2d 657 (1969); *Butler v. Wittland*, 18 Ill.App.2d 578, 153 N.E.2d 106 (1958); *Eldridge v. Don Beachcomber, Inc.*, 342 Ill.App. 151, 95 N.E.2d 512 (1950).

Other courts have held that the dram shop acts of the states where the sales took place determine the liabilities and rights of the parties, even when the injuries are sustained in a state other than the one of sale. *Trapp, supra*, presumably falls into this category. Those decisions giving apparent extraterritorial effect to the dram shop act of the state where the sale took place mostly did so by abandoning lex loci delicti as a choice of law rule when its application would preclude recovery.[4] This resulted in applying the law of the state of sale to the vendor rather than in giving that dram shop act extraterritorial effect. See, *e.g., Zucker v. Vogt*, 329 F.2d 426 (2d Cir.1964); *Osborn v. Borchetta*, 20 Conn.Supp. 163, 129 A.2d 238 (1956); *Schmidt v. Driscoll Hotel, Inc.*, 249 Minn. 376, 82 N.W.2d 365 (1957). Unlike the instant case, in all these cases the state of sale had a dram shop act.

The few cases that have imposed civil liability on a seller of alcoholic beverages in one state for injuries sustained in another state have done so on the basis of common law negligence liability, not on the basis of statutory dram shop liability. See *Blamey v. Brown*, 270 N.W.2d 884 (Minn.1978), *cert. denied*, 444 U.S. 1070, 100 S.Ct. 1013, 62 L.Ed.2d 751 (1980), and *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 546 P.2d 719, 128 Cal.Rptr. 215 (1976), *cert. denied*, 429 U.S. 859, 97 S.Ct. 159, 50 L.Ed.2d 136 (1976).

California first imposed dram shop liability based on common law negligence principles in *Vesely v. Sager*, 5 Cal.3d 153, 486 P.2d 151, 95 Cal.Rptr. 623 (1971), a case which did not involve a choice of law situation.

In *Bernhard*, 128 Cal.Rptr. at 222, 546 P.2d at 726, the California Supreme Court noted that a violation of the California criminal law making it a misdemeanor to sell liquor to intoxicated persons could not be used as a basis for imposing civil liability on a Nevada resident. The court then used the governmental interest analysis approach, which goes beyond significant contacts, to resolve the choice of law issue and applied California common law dram shop liability to hold the Nevada tavern owner liable to a California resident for damages resulting from a California automobile collision. Nevada, like Montana, did not permit recovery from a tavern keeper.

The California Supreme Court later extended the common law dram shop liability

---

**4.** This court abandoned "lex loci delicti" and adopted the "significant-contacts" rule in *Issen-

*dorf v. Olson*, 194 N.W.2d 750 (N.D.1972).

to include social hosts and other noncommercial providers of alcoholic beverages. *Coulter v. Superior Court of San Mateo County*, 21 Cal.3d 144, 577 P.2d 669, 145 Cal.Rptr. 534 (1978).

Although this liberal extension of common law negligence liability has not been judicially abrogated by the California Supreme Court, it has for all intents and purposes been legislatively overruled, as a California appellate court noted. *Cable v. Sahara Tahoe Corporation*, 93 Cal.App.3d 386, 155 Cal.Rptr. 770 (1979). The court in *Cable* refused to allow a California resident recovery from a Nevada corporate tavern keeper for injuries resulting from a Nevada accident. *Cable* can be factually distinguished from both *Bernhard* and the instant case because the state of sale and the state of the accident were the same. The opinion is valuable, however, for its extensive discussion of the history of California and Nevada dram shop liability.

The court in *Cable* noted that the only source of a California policy of protecting California residents injured by intoxicated persons who were sold or furnished alcoholic beverages outside California is the California Supreme Court's statement in *Bernhard*. The court concluded that the policy statement was expressly repudiated by the California legislature when it amended § 25602 of the Business and Professions Code to eliminate civil liability and § 1714 of the Civil Code to prohibit liability of any social host. Both amendments contained strong statements of intent to nullify the decisions in the *Vesely, Bernhard* and *Coulter* cases. *Cable*, 155 Cal.Rptr. at 773, 777.

The *Blamey* case, *supra*, is factually similar to the Thoring situation. Two Minnesota minors drove from the Twin Cities to Hudson, Wisconsin, where they purchased beer at a small neighborhood bar. The bar had no connection with Minnesota other than its proximity to the state border, the interstate highway and the large urban sprawl of metropolitan Minneapolis-St. Paul. After the minors returned to Minnesota the car was involved in a one-car accident. The injured passenger sued the Wisconsin liquor establishment.

The Minnesota Supreme Court determined that it had personal jurisdiction over the nonresident bar owner in *Blamey* and then imposed liability on the Wisconsin bar owner by finding common law negligence in making an illegal sale. It specifically denied the application of Minnesota's dram shop act to a non-Minnesota vendor. *Blamey*, 270 N.W.2d at 889–90. *Blamey*, and its precedent, *Anderson v. Luitjens*, 311 Minn. 203, 247 N.W.2d 913 (1976), have since been overruled on the personal jurisdiction issue by *West American Insurance Company v. Westin, Inc.*, 337 N.W.2d 676 (Minn.1983).

In *West American* an eighteen-year-old Minnesota resident drove to a Wisconsin border city bar and on her return was involved in an accident in Minnesota. Minnesota's drinking age was nineteen and Wisconsin's was eighteen. Her insurer settled claims on her behalf and then brought action in Minnesota against the Wisconsin vendor for contribution or indemnity, alleging common law negligence in the making of an illegal sale. The Wisconsin vendor moved to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. Because the court determined there was no personal jurisdiction it never reached the second issue.

■ Respect for territoriality and the integrity of state sovereignty, a primary consideration in determining the existence of personal jurisdiction, is also a factor in choice of law determinations. See *Blamey*, 270 N.W.2d at 890–91. The court in *West American* did not have to specifically confront the issue of which state's dram shop law applied, but dicta in the opinion substantially weakens Thoring's reliance on that portion of *Blamey* which has not been overruled. Noting that the difference between Minnesota and Wisconsin dram shop liability meant that Minnesota was the only forum where a remedy was available, the Minnesota Supreme Court said that fact was unfortunate but it was not sufficient

to confer jurisdiction upon Minnesota courts. *West American,* 337 N.W.2d at 681. So, too, it is not sufficient to give North Dakota's dram shop act extraterritorial effect.

A Wisconsin appellate court apparently shares this view and has refused to enforce a Minnesota judgment imposing dram shop liability on a Wisconsin bar for the sale of alcoholic beverages in Wisconsin. The injury-producing accident occurred in Minnesota. Citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and *West American,* the Wisconsin court stated that "Minnesota is not entitled to export its public policy to Wisconsin, a coequal sovereign.... The judgment also would no longer be enforced in Minnesota.... Jurisdiction for this judgment was based on Minnesota Supreme Court decisions that have since been overruled." *Hennes v. Loch Ness Bar,* 117 Wis.2d 397, 344 N.W.2d 205, 206 (1983).

Thoring urges us to follow the rulings of the California Supreme Court in *Bernhard* and of the Minnesota Supreme Court in *Blamey* as persuasive authority for extending our dram shop act's application to impose civil liability on a Montana vendor. We decline to do so. Those cases not only imposed liability on the basis of common law negligence rather than on the basis of a dram shop statute, but also specifically disavowed the extraterritorial application of their respective dram shop statutes. Furthermore, the viability of both *Bernhard* and *Blamey* is very much in doubt because of subsequent legislative and judicial action.

 We conclude that North Dakota's dram shop act as codified at § 5–01–06, NDCC, has no extraterritorial effect under the circumstances here where the sale took place outside of North Dakota, and that the trial court erred when it held as a matter of law that § 5–01–06 applies to Lenny's. Our holding today is strictly limited to the determination that North Dakota's dram shop act applies only to North Dakota vendors. We make no determination regard-

ing the possibility of the Montana court reconsidering its previous rulings.

 We recognize that in the usual situation a court must consider whether or not it has jurisdiction before it considers the applicability of a statute. In the instant case, however, our determination that North Dakota's dram shop act applies only to North Dakota vendors is dispositive of the appeal, making it unnecessary for us to reach the issue of personal jurisdiction. As we have stated previously, "questions, the answers to which are not necessary to the determination of a case, need not be considered." *Hospital Services v. Brooks,* 229 N.W.2d 69, 71 (N.D.1975).

Reversed.

ERICKSTAD, C.J., and GIERKE, SAND and VANDE WALLE, JJ., concur.