Susan HOWELLS, Appellant,

v.

Roger McKIBBEN, Respondent.

No. 48780.

Supreme Court of Minnesota.

June 8, 1979.

William B. Randall, County Atty., Daniel J. Buivid, Jr., and Kevin O'Connell, Asst. County Attys., St. Paul, for appellant.

C. Paul Jones, Public Defender, and Kathy King, Asst. Public Defender, Minneapolis, for respondent.

Heard before PETERSON, KELLY, and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This action was brought by plaintiff Susan Howells to adjudge defendant Roger McKibben the father of her child, Tammy Irene Howells. Plaintiff also seeks damages for the expenses resulting from her pregnancy and for the expenses attributable to the child's support, maintenance, and education.

Defendant, a Wisconsin resident, initially appeared before the district court in Ramsey County and at that time moved to quash service and dismiss the action for lack of personal jurisdiction. Subsequently, the case was assigned to a referee, who denied defendant's motion. Defendant appealed from the referee's order to the district court, wherein the order was vacated and a motion to dismiss was granted for lack of personal jurisdiction over defendant. Plaintiff now appeals to this court from the district court's order. We reverse that order, vacate the dismissal, and remand for further proceedings.

In her complaint, dated December 1, 1976, plaintiff alleged that:

1. "On or about April, 1974, at St. Croix Falls, Wisc. the defendant begot the plaintiff with an illegitimate child."

2. "On January 25, 1975, in St. Paul Ramsey Hospital, the plaintiff was delivered of this illegitimate female child, named Tammy Irene Howells."

3. "The defendant is the father of this child."

4. "The plaintiff resides in Ramsey County, Minnesota."

Additionally, in an affidavit submitted to the referee, plaintiff claims that she met defendant in Luck, Wisconsin, on or about February 16, 1974; that she first had sexual intercourse with defendant on or about February 19, 1974, at her apartment in St. Paul, Minnesota; that she had a relationship with defendant from February to May, 1974, including acts of sexual intercourse with defendant at his home in St. Croix Falls, Wisconsin; that during this time defendant visited plaintiff at her home in St. Paul and on two occasions in April 1974 defendant had dinner with plaintiff and her mother in St. Paul; that during plaintiff's pregnancy defendant telephoned her at her St. Paul residence to discuss the pregnancy; and that plaintiff last had sexual intercourse with defendant on or about February 15, 1975, in St. Paul.

■ There are two issues to be resolved before a Minnesota court may properly exercise personal jurisdiction over a nonresident. It must be established:

(1) that there is appropriate state legislation or rule authorizing the court to exercise such jurisdiction;

(2) that the exercise of personal jurisdiction over defendant does not offend the due process principles embodied in the United States Constitution.

1. The statute under which plaintiff attempts to proceed is Minn.St. 543.19, subd. 1(c), which reads, in pertinent part, as follows:

"As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over * * * any non-resident individual * * * in the same manner as if * * * he were a resident of this state. This section applies if * * * the * * * non-resident individual:

\* \* \* \* \* \*

(c) Commits any tort in Minnesota causing injury or property damage * * * ." 1

Thus, in order for subdivision 1(c) to apply in this case, it must be shown that the instant action is based upon (1) a tort (2) committed "in Minnesota."

In *State ex rel. Nelson v. Nelson,* 298 Minn. 438, 216 N.W.2d 140 (1974), this court held that a cause of action for paternity is based in "tort" and thus is within the intended scope of § 543.19. As the Nelson court reasoned:

"The action to establish paternity and to compel support of a child is civil in nature. *State v. Tolberg,* 273 Minn. 221, 222, 140 N.W.2d 845, 846 (1966). The doing of an act prohibited by law or the neglect to perform a duty imposed by law, resulting in damages to another, creates a legal liability, *Baxter v. Coughlin,* 70 Minn. 1, 72 N.W. 797 (1897), and may be denominated a tort within the scope of the long-arm statute. By failing to perform his statutory duties of support, defendant has caused foreseeable damages to complainant. Contrary to defendant's contention, complainant mother has indeed suffered injury, for, quite apart from the physical and emotional trauma of bearing the child and rearing it alone,

she is faced with the financial burdens of medical and hospital bills. She is also confronted with the expense of rearing their child and possible impairment of her earning power." 298 Minn. 441, 216 N.W.2d 143.

Therefore, contrary to defendant's contention, the instant action for paternity clearly encompasses a tort within the meaning of § 543.19, subd. 1(c).

The standard for determining whether a tort is committed "in Minnesota," for purposes of applying the long-arm statute, was articulated by this court in *Anderson v. Luitjens,* 311 Minn. 203, 247 N.W.2d 913 (1976), as follows:

"* * * The test for whether or not a tort has occurred 'in Minnesota' for purposes of long-arm jurisdiction is whether damage from the alleged tortious conduct resulted in Minnesota. If the injury or the damage occurred here, jurisdiction has followed in cases where minimum contacts have been shown despite the fact that the tortious activity occurred elsewhere." 311 Minn. 206, 247 N.W.2d 915 (citations omitted).

See, also, *Blamey v. Brown,* 270 N.W.2d 884 (Minn.1978), petition for cert. filed, 47 U.S. L.W. 3498 (U. S. January 11, 1979) (No. 78–1100); Restatement, Conflict of Laws 2d, § 37.

In this case, damage from defendant's alleged tortious conduct did, indeed, occur in Minnesota. Plaintiff, a Minnesota resident, has suffered both physically and emotionally, in this state, as a result of bearing the child and raising it alone. She has undoubtedly incurred medical and hospital expenses in Minnesota incident to her pregnancy and the child's birth. Moreover, the expense associated with raising the child is substantial. See, *State ex rel. Nelson v. Nelson, supra.* All these damages occurred in Minnesota as a result of defendant's alleged tortious conduct. Therefore, consistent with *Anderson v. Luitjens, supra,* the alleged tort involved in this case was committed "in Minnesota" and, accordingly,

---

1. The word "tort" was replaced by the word "act" in § 543.19, subd. 1(c), by L.1978, c. 780.

§ 543.19, subd. 1(c), authorizes a Minnesota court to exercise personal jurisdiction over defendant.

2. The due process guarantees of the Constitution require that a defendant have certain "minimum contacts" with the forum state so that "* * * maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [citations omitted]." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). In other words, the dictates of the due process clause are satisfied only if a sufficient nexus exists between Minnesota and defendant so that it is both fair and reasonable to require defense of the action in this state. See, *Kulko v. California Superior Court,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132, 141 (1978).

The determination of whether "minimum contacts" are present in a given case must be made on a case-by-case basis; no hard and fast rule can be applied in resolving the question. As recently recognized by the United States Supreme Court in *Kulko v. California Superior Court, supra:*

> "Like any standard that requires a determination of 'reasonableness,' the 'minimum contacts' test of International Shoe is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present. *Hanson v. Denckla,* 357 U.S. 235, 246, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283 (1958). We recognize that this determination is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.' *Estin v. Estin,* 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561 (1948)." 436 U.S. 92, 98 S.Ct. 1697, 56 L.Ed.2d 141.

The pertinent factors to be considered in making the "minimum contacts" determination are: (1) the quantity of defendant's contacts with Minnesota; (2) the nature and quality of those contacts; (3) the source and connection of the cause of action with those contacts; (4) the interests of the state in providing a forum; and (5) the convenience of the parties.[2] *Blamey v. Brown, supra; Sausser v. Republic Mortgage Investors,* 269 N.W.2d 758 (Minn.1978); *David M. Rice, Inc. v. Intrex, Inc.,* 257 N.W.2d 370 (Minn.1977); *Anderson v. Luitjens, supra.*

Plaintiff states, in her affidavit, that defendant visited her in St. Paul an unspecified number of times during February to May, 1974, and claims that on two occasions in April 1974 defendant had dinner in St. Paul with plaintiff and her mother. In addition, defendant engaged in sexual intercourse with plaintiff on at least two occasions in St. Paul. He also made telephone calls to plaintiff's Minnesota home. These facts, which are uncontradicted by defendant, show that the quantity and quality of defendant's contacts with Minnesota are significant.

Defendant's contacts with Minnesota also bear a direct relation to the instant cause of action. The above facts establish that a substantial portion of defendant's relationship with plaintiff was developed in this state. As part of this relationship defendant and plaintiff engaged in acts of sexual intercourse which, of course, resulted in the institution of plaintiff's suit. Moreover, in *Anderson v. Luitjens, supra,* this court noted that in considering the connection between defendant's contacts and the cause of action an important element is whether it is reasonable for a defendant to foresee that his conduct "might lead to the consequences [which actually occurred] and that those consequences might occur in Minnesota." 311 Minn. 209, 247 N.W.2d 916. See, also, *Blamey v. Brown, supra.* In this case, it was certainly reasonably foreseeable by defendant that a continued sexual relationship with plaintiff, a Minnesota resident, might result in the injuries suffered by plaintiff and that those injuries would be sustained in this state.

2. The quantity and quality of defendant's contacts with Minnesota and the relation of those contacts with the cause of action are the primary factors to be considered. See, *Anderson v. Luitjens,* 311 Minn. 203, 210 n. 7, 247 N.W.2d 913, 917 n. 7 (1976).

Further, Minnesota has a strong interest in providing a forum for its own residents. See, e.g., *Anderson v. Luitjens, supra.* This is particularly true in the context of a paternity action. As was stated by this court in *State ex rel. Nelson v. Nelson, supra,* "[f]or her [the mother] to be able to do so [bring a paternity action] is of interest to this state, both for its citizens and for its own potential obligation of public support." 298 Minn. 442, 216 N.W.2d 143.

And, finally, the relative convenience of the parties weighs in favor of a Minnesota court exercising personal jurisdiction over defendant. Defendant resides in St. Croix Falls, Wisconsin, a community contiguous to the Minnesota border. Consequently, defendant is not terribly inconvenienced by having to travel to St. Paul, a distance which is driven by car within an hour's time. In addition, according to plaintiff's affidavit, she intends to call two witnesses who reside in St. Paul.

The district court, in granting defendant's motion to dismiss, did not apply the five factors referred to above. Rather, its decision was based upon the reasoning that if personal jurisdiction over defendant existed here, then (1) it would follow that "a woman in New York could name as the father of her child a man in Hawaii and compel him to come to New York to defend or run the risk of adjudication by default," and (2) it would result in the assertion of fraudulent claims of paternity. Neither of these contentions is persuasive. First, for a New York court to be able to exercise jurisdiction over a Hawaii resident, it must be determined whether, *under the circumstances of that particular case,* the defendant has "minimum contacts" with the forum state. The fact that minimum contacts are established in the instant case does not necessarily mean that minimum contacts will exist in the hypothetical situation posed by the trial court.

Similarly, the trial court's concern over the assertion of fraudulent claims does not justify its decision. This court in *State ex rel. Nelson v. Nelson, supra,* recognized the possibility of groundless claims and reasoned that to combat this problem the trial court may, in its discretion, require the complainant to make "at least a minimal factual recitation of 'probable' fatherhood, beyond a bare allegation of fatherhood." [3] 298 Minn. 442, 216 N.W.2d 143. In this case, plaintiff has made such a showing, as her affidavit states that she had no sexual relations with anyone other than defendant during the period of time in which she could have conceived her child.

The application of the five factors set out above shows that defendant has such "minimum contacts" with this state that it is both fair and reasonable to require him to conduct his defense of the paternity action in Minnesota. The considerations relied upon by the trial court do not support a contrary result.[4] Accordingly, we hold that

---

**3.** We note that the recent case of *State, on Behalf of Ortloff, v. Hanson,* 277 N.W. 205 (Minn.1979), acknowledges that existing blood-testing techniques can, with 91–93 percent accuracy, determine whether a defendant, in fact, is not the father of the child in question. 277 N.W.2d 207. Given the reliability of blood testing, a nonresident defendant who believes he is falsely accused of fathering a child of a resident mother may wish to voluntarily submit a sample of his blood for testing, and thereby possibly prevent the necessity of defending the action in this state. In that paternity proceedings are very informal, this might be a viable alternative.

**4.** Similarly, contrary to defendant's assertion, the decision in *State v. McCormick,* 273 N.W.2d 624 (Minn.1978), does not support the district court's decision. In *McCormick,* this court refused to exercise personal jurisdiction over a defendant for conduct occurring outside the state, although such conduct caused injury within the state. The *McCormick* case, however, involved a violation of criminal statutes, and, of course, "* * * a criminal case [is] not subject to the same flexibility enjoyed by the more elastic rules governing extraterritorial jurisdiction in civil cases." *State v. McCormick, supra,* 273 N.W.2d 628. Since the instant paternity action is a civil proceeding, see, *State ex rel. Nelson v. Nelson,* 298 Minn. 438, 216 N.W.2d 140 (1974), reliance on the *McCormick* decision is misplaced.

Nor does the case of *Bartlett v. Superior Court of Santa Barbara County,* 86 Cal.App.3d 72, 150 Cal.Rptr. 25 (1978), which was heavily relied on by defendant at oral argument, compel a different conclusion than that reached

a Minnesota court may properly exercise personal jurisdiction over defendant in the instant paternity action.[5]

Reversed and remanded.

TODD, J., took no part in the consideration or decision of this case.

herein. In *Bartlett*, the court reasoned that the alleged putative father, a Florida resident, did not have "minimum contacts" with California because his trips to that state were "unrelated to his personal association with [the mother]." 86 Cal.App.3d 76, 150 Cal.Rptr. 27. This reasoning is inapplicable to the instant case because defendant makes no claim that he came to this state for any purpose other than to visit plaintiff. Thus, here, defendant's contacts are directly related to the instant paternity action.

5. It should be noted that Wisconsin is a signatory to the Uniform Reciprocal Enforcement of Support Act (URESA) of 1968, see Wis.St. 52.-10. Minnesota participates in the URESA of 1950, as amended. See Minn.St. 518.41–.53. All states, organized territories, and the District of Columbia have adopted either the 1950 Act, as amended, or the 1968 Act. See, 9 U.L.A. 546, 567 (Supp.1979).

Some recent decisions have allowed the issue of paternity to be determined under URESA. See, *Clarkston v. Bridge*, 273 Or. 68, 539 P.2d 1094 (1975); *Yetter v. Commeau*, 84 Wash.2d 155, 524 P.2d 901 (1974); *Brown v. Thomas*, 221 Tenn. 319, 426 S.W.2d 496 (1968). Consistent with this authority allowing a paternity action to be brought under URESA, we believe that a URESA proceeding should always be considered and explored in a case such as this. The parties may very well agree to waive any legal or constitutional objections that may possibly arise, thereby disposing of some troublesome problems informally.