SHERBURNE COUNTY SOCIAL SERVICES, on Behalf of Jean Louise POULIOT, Respondent,

v.

Kevin K. KENNEDY, petitioner, Appellant.

No. C4-87-378.

Court of Appeals of Minnesota.

Aug. 4, 1987.

Review Granted Sept. 23, 1987.

John E. MacGibbon, Co. Atty., Kim E. Brandell, Asst. Co. Atty., Elk River, for respondent.

Thomas D. Hayes, Smith, Pringle and Hayes, Monticello, for appellant.

Considered and decided by RANDALL, P.J., and FOLEY and NIERENGARTEN, JJ., with oral argument waived.

**OPINION**

RANDALL, Judge.

Appellant Kevin Kennedy appeals the trial court's denial of his motion to dismiss this paternity action. Kennedy's motion asserted that the court lacked personal jurisdiction over him because he is a resident of Montana, and because there are insufficient contacts with the State of Minnesota concerning the issue before the court. This court granted discretionary review on March 23, 1987, by special term order, citing *Miller v. City of St. Paul*, 363 N.W.2d

806, 809 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. April 26, 1985). We reverse.

## FACTS

Appellant, while a resident of Minnesota, engaged in consensual intercourse with Jean Pouliot, a Minnesota resident, on July 30, 1983. Thereafter appellant moved to Montana and still resides there. In November 1983, over the Thanksgiving holiday and between November 20 and November 26, Pouliot and a friend visited appellant at his Montana home. Pouliot and appellant engaged in intercourse approximately two or three times during this visit.

On September 5, 1984, Pouliot gave birth to a son. The County of Sherburne subsequently brought this action in Minnesota to determine paternity, to assign responsibility for medical expenses relative to the birth, and to set child support. Appellant did not answer, but moved to dismiss based on lack of personal jurisdiction. The trial court denied the motion.

## ISSUE

Did the trial court properly deny appellant's motion to dismiss, finding Minnesota had personal jurisdiction over him?

## ANALYSIS

Minnesota served appellant under the long arm statute, Minn.Stat. § 543.19 (1984). Appellant argues he has insufficient minimum contacts with Minnesota for this state to exercise personal jurisdiction over him. He claims that his July 30, 1983, act of intercourse with Pouliot is insufficient basis to assert personal jurisdiction over him because the child was not conceived then, and he has no other Minnesota based contacts. He contends that if he is the father,[1] the act of intercourse leading to conception must have occurred during Pouliot's visit to Montana in November 1983. Pouliot gave birth thirteen months and one week after the intercourse in Minnesota, and approximately nine and one half months after the intercourse in Montana.

■ Before Minnesota courts can exercise long arm jurisdiction over nonresidents, two tests must be met: (1) the long arm statute, Minn.Stat. § 543.19, must be satisfied, and (2) plaintiff must show minimum contacts between defendant and his state such that asserting jurisdiction does not offend due process. *Howells v. McKibben*, 281 N.W.2d 154, 155–56 (Minn.1979); *State v. Hartling*, 360 N.W.2d 439, 440–41 (Minn.Ct.App.1985).

*Long Arm Statute*

■ Minnesota's long arm statute permits a court of this state having subject matter jurisdiction to exercise personal jurisdiction over a nonresident individual if that individual:

Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(1) Minnesota has no substantial interest in providing a forum; or

(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice; or

(3) the cause of action lies in defamation or privacy.

Minn.Stat. § 543.19, subd. 1(d). Paternity is a tort cause of action, within the scope of § 543.19. *Howells*, 281 N.W.2d at 156 (citing *State ex rel. Nelson v. Nelson*, 298 Minn. 438, 216 N.W.2d 140 (1974)).

■ In *Howells* the supreme court found that, even though conception may have occurred in Wisconsin, the "injury" to the plaintiff occurred in Minnesota. The court defined "injury" as the mother's physical and emotional suffering caused by having to raise the child alone, the resulting medical expenses, and those expenses incident to raising the child. *Howells*, 281 N.W.2d at 156. Here, although conception oc-

---

1. Appellant, while arguing the motion to dismiss for lack of personal jurisdiction, preserved the defense that he is not the father and is request-

ing that, if there is to be a trial on the merits, it would be in Montana.

curred outside Minnesota, the birth is inside Minnesota. For the purposes of appellate review, the first part of the long arm statute has been satisfied. We now turn to whether or not the burden placed on the appellant by being brought under the state's jurisdiction would violate fairness and substantial justice.

*Minimum Contacts*

■ Appellant argues he does not have sufficient minimum contacts with Minnesota to be compelled to defend a paternity suit here, based on *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945). *International Shoe* requires a defendant have minimum contacts with the forum state so that maintaining a suit does not offend notions of justice and fair play. *Id.* 326 U.S. at 316, 66 S.Ct. at 158. This concept is embodied in Minn. Stat. § 543.19, subd. 1(d)(2). Both *Howells* and *Hartling* apply the *International Shoe* standard to paternity actions.

Due process, the basis of the minimum contact test, is served only where there exists a "sufficient nexus between Minnesota and defendant so that it is both fair and reasonable to require defense of the action in this state." *Howells,* 281 N.W.2d at 157, quoting *Kulko v. California Superior Court,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978). *See also, Hartling,* 360 N.W.2d at 441 (courts must determine whether maintenance of a suit is consistent with traditional due process notions of fairness). Minimum contacts must be determined on a case by case basis. *Howells,* 281 N.W.2d at 157. The pertinent factors to be considered are:

(1) the quantity of defendant's contacts with the state;

(2) the nature and quality of the contacts;

(3) the connection of the cause of action with those contacts;

(4) the interest of the state in providing a forum; and

(5) convenience to the parties.

*Hartling,* 360 N.W.2d at 441.

A. *Quantity of appellant's contacts with Minnesota*

Appellant formerly lived in Minnesota. One isolated sexual incident with Pouliot occurred here. Appellant's contacts with Pouliot in Minnesota are minimal. If medical science is to be believed, their act of intercourse on July 30, 1983, did not result in the September 5, 1984, birth. "When the quantity of contacts is minimal, the nature and quality become dispositive." *Hartling,* 360 N.W.2d at 441.

B. *Nature and quality of the contacts*

Appellant argues the quality of contacts between him and Pouliot does not support exercise of personal jurisdiction over him, because the act that resulted in her pregnancy, if he is the father, did not occur in Minnesota. Respondent argues appellant knew he was having intercourse in Montana with a Minnesota resident who would eventually return to Minnesota, and thus, jurisdiction in Minnesota is proper. Respondent cites *Hartling* as controlling on this issue.

In *Hartling,* a paternity action, the father was a resident of Wisconsin, the mother a resident of Minnesota. The child was conceived in Wisconsin, and born in Minnesota. This court held that the quality and quantity of contacts of the father with the State of Minnesota and the mother, a Minnesota resident, were sufficient to permit Minnesota to exercise personal jurisdiction. There, the couple met in June and began a relationship of social activities and sexual intercourse in the Duluth, Minnesota/Superior, Wisconsin [2] area. Most of the incidents of intercourse, including the intercourse leading to conception, occurred in Wisconsin. The relationship continued from June until mid-October.

This court found that the continuous, four month social and sexual relationship bore a direct relationship to the cause of

---

**2.** Duluth and Superior are sister cities separated by a narrow end of Lake Superior. Access between the two cities consist of about a five minute drive across a bridge. Night life and social activities involving people crossing over from one side to the other are common place.

action, and that it was not constitutionally impermissible to require Hartling to come to Minnesota to defend on the paternity suit. This court concluded that Hartling's contacts with Minnesota and a Minnesota resident were such that he could reasonably anticipate being hailed into Minnesota court for child support. *Id.* at 441.

On the other hand, here Pouliot concedes that there was not one isolated act of sexual intercourse in Minnesota in July 1983. Thereafter she voluntarily traveled to Montana in November 1983, and engaged in sexual intercourse there with appellant. Pouliot does not dispute that if appellant is the father, the act of intercourse leading to conception took place in November 1983 in Montana. Appellant's contacts with Minnesota are minimal, and the limited quality and quantity of contacts in Minnesota are dissimilar enough that *Hartling* is not controlling on this issue.

### C. Source and connection of the cause of action with those contacts

Appellant argues this element has not been proved because Pouliot did not have a continuing relationship with appellant, her contacts with him were isolated incidents, and the couple had more contacts in Montana than in Minnesota. Since we accept the parties statements that the sexual contact that led to the cause of action, if appellant is the father, arose in Montana, appellant prevails on this element.

### D. Interest of Minnesota in providing a forum

In *West American Insurance Co. v. Westin, Inc.,* 337 N.W.2d 676 (Minn.1983), the Minnesota Supreme Court noted the United States Supreme Court's shift of the focus of this element in two recent cases, *World-Wide Volkswagen,* 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980) and *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). These cases hold that: the critical focus in any jurisdictional analysis must be on "the relationship among the defendant, the forum, and the litigation." * * * This tripartite relationship is defined by the defendant's con-

tacts with the forum *state,* not by the defendant's contacts with *residents* of the forum.

*West American Insurance Co.,* 337 N.W.2d at 679. Here appellant has no contacts with the forum state, other than the allegation he has fathered the child of a Minnesota resident.

### E. Relative convenience of the parties

In *West American,* the Minnesota Supreme Court held, "this factor is irrelevant unless the defendant also has, as a threshold matter, sufficient contacts with the forum state." *West American,* 337 N.W.2d at 680. Appellant argues that since the element of "sufficient contacts" has not been met, convenience is not dispositive. We agree, and do not decide this case on relative convenience. We note the availability of legal redress in the State of Montana for Sherburne County and Pouliot under the Uniform Reciprocal Enforcement of Support Act (URESA), adopted in Minn. Stat. ch. 518c (1986) and in Montana MCA 40–5–101 to 40–5–142 (1951).

We hold appellant's contacts with Minnesota are insufficient to require him to come to Minnesota to defend this paternity action. The State has recourse through URESA, and adjudication under the Act promotes the interests of justice and fair play as required by Minn.Stat. § 543.19.

### DECISION

The trial court erred by finding personal jurisdiction over appellant.

Reversed.