**SHERBURNE COUNTY SOCIAL SER-VICES on Behalf of
Jean Louise POULIOT, Petitioner,
Appellant,**

v.

**Kevin A. KENNEDY, Respondent.**

No. C4–87–378.

Supreme Court of Minnesota.

July 29, 1988.

John E. MacGibbon, Co. Atty., Kim E. Prandell, Asst. Co. Atty., Elk River, for petitioner.

Thomas D. Hayes, Monticello, for respondent.

**WAHL, Justice.**

Sherburne County Social Services, on behalf of Jean Louise Pouliot, brought suit under The Parentage Act, Minn.Stat. § 257.51 *et seq.* (1986), against Kevin A. Kennedy, to establish paternity, medical expenses and ongoing child support. The single issued raised on appeal is whether minimum contacts exist between Kennedy, a non-resident defendant, and the state of Minnesota sufficient to sustain the state's exercise of personal jurisdiction over him. The Sherburne County District Court found jurisdiction and denied Kennedy's motion to dismiss. The court of appeals reversed, holding that Kennedy's contacts with Minnesota were insufficient to require him to defend the paternity action here. *Sherburne County Social Serv. o.b.o. Pouliot v. Kennedy*, 409 N.W.2d 907 (Minn.App. 1987). Finding no jurisdiction, we affirm the decision of the court of appeals.

Kennedy and Pouliot met in St. Cloud, Minnesota on July 30, 1983 and on that date engaged in sexual intercourse once. Both were residents of the state of Minne-

sota at the time. However, on or about August 1, 1983, Kennedy moved to Montana where he has remained a full-time resident and domiciliary of Flathead County. There was no further contact between the two until late November when Pouliot and a mutual friend visited Kennedy in Montana. Pouliot alleges that she and Kennedy had sexual intercourse in Montana three times between November 20 and 26, 1983, but asserts no other contacts between herself and Kennedy from July 30 to November 20, 1983.

On September 5, 1984, Pouliot gave birth to a son in Fridley, Minnesota, approximately thirteen months after intercourse in Minnesota and nine and one-half months after intercourse in Montana. She alleges that Kennedy is the father. Sherburne County Social Services brought this action in March, 1986, to determine paternity, assign medical and other costs, and set child support. Kennedy moved to dismiss based on lack of personal jurisdiction. The district court denied the motion but was reversed by the court of appeals on discretionary review. This appeal followed.

A Minnesota court must resolve two issues before it can exercise personal jurisdiction over a non-resident defendant. It must determine first whether the statutory standard of our long-arm statute, Minn. Stat. § 543.19 (1986) is satisfied, and, second, whether there exists such minimum contacts between the defendant and this state that the exercise of personal jurisdiction would not offend due process. *Ulmer v. O'Malley*, 307 N.W.2d 775, 777 (Minn. 1981); *Howells v. McKibben*, 281 N.W.2d 154, 155–56 (Minn.1979). In the present case neither party argues that the first issue is in dispute.[1] It is the second issue that has brought the case before us.

---

1. Minn.Stat. § 543.19, subd. 1 (1986), provides in part:

    As to the cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over * * * any nonresident individual * * * in the same manner as if * * * the individual were a resident of this state. This section applies if * * * the * * * nonresident individual:

    * * * * * *

    (d) Commits any act outside Minnesota causing injury or property damage in Minnesota * * *.

    This court has determined that a cause of action for paternity is within the intended scope of § 543.19. *Howells,* 281 N.W.2d at 156 (*citing State ex rel. Nelson v. Nelson,* 298 Minn. 438, 216 N.W.2d 140 (1974)). Thus, the only issue for this court to decide is whether minimum contacts exist between Kennedy and Minnesota.

■ Would the exercise of personal jurisdiction over this non-resident defendant offend due process? The United States Supreme Court has delineated the applicable constitutional standard of fundamental fairness as follows:

> [D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted). The critical focus in any jurisdictional analysis is "the relationship among the defendant, the forum and the litigation." *West American Insurance Co. v. Westin, Inc.,* 337 N.W.2d 676, 679 (Minn.1983) (*quoting Rush v. Savchuk,* 444 U.S. 320, 327, 100 S.Ct. 571, 576–78, 62 L.Ed.2d 516 (1980)). This relationship is defined by the defendant's contacts with the forum *state,* not with its *residents. West American,* 337 N.W.2d at 679.

■ To determine whether minimum contacts exist between a non-resident defendant and the state, this court examines five factors: (1) the quantity of contacts with the state, (2) the nature and quality of those contacts, (3) the connection or relationship between the contacts and the cause of action, (4) the state's interest in providing a forum, and (5) the relative convenience of the parties. *Marquette Nat'l. Bank of Minneapolis v. Norris,* 270 N.W.2d 290, 295 (Minn.1978). Factors (4) and (5) are considered secondary. *Id.* In regard to the fourth factor, Minnesota's interest in providing a forum for its residents is not a "contact" and cannot establish personal jurisdiction. *Dent–Air, Inc. v. Beech Mountain Air Serv., Inc.,* 332 N.W.2d 904, 908 (Minn.1983). The fifth factor, convenience, "is irrelevant unless the defendant also has, as a threshold matter, sufficient contacts with the forum state." *West American,* 337 N.W.2d at 680.

■ A single contact can suffice to establish personal jurisdiction, but where jurisdiction is based on a single contact, the nature and quality of the contact becomes dispositive. *Marquette Nat'l. Bank,* 270 N.W.2d at 295. Finally, the facts of each case must be weighed to determine whether the required "affiliating circumstances" are present. *Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 (1978); *Howells,* 281 N.W.2d at 157.

Sherburne County argues that *Howells* and *State v. Hartling,* 360 N.W.2d 439 (Minn.App.1985), should govern the outcome in the present case. In those paternity cases, personal jurisdiction was established over non-resident defendants even though sexual intercourse and conception occurred in Wisconsin. Sherburne relies primarily on the courts' reasoning in both cases that the putative father should have "reasonably foreseen" that a sexual relationship with a Minnesota resident might result in injury and other consequences in Minnesota. *Id.* at 441; *Howells,* 281 N.W.2d 157. However, in *Howells* we found that the quantity and quality of defendant's contacts with Minnesota were significant in that a "substantial portion of defendant's relationship with plaintiff was developed in this state." *Howells,* 281 N.W.2d at 157.

We noted that:

> "[D]efendant visited her in St. Paul an unspecified number of times during February to May, 1974, * * * [and] on two occasions in April 1974 defendant had dinner in St. Paul with plaintiff and her mother. In addition, defendant engaged in sexual intercourse with plaintiff on at least two occasions in St. Paul. He also made telephone calls to plaintiff's Minnesota home."

*Id.* The plaintiff's affidavit also alleged that she and the defendant had sexual intercourse in St. Paul after the birth of the child. *Id.* at 155. The court concluded that "it was certainly reasonably foreseeable by defendant that a *continued* sexual relationship with plaintiff, a Minnesota resident, might result in the injuries suffered by

plaintiff * * *." *Id.* at 157. (emphasis added).

In *Hartling,* personal jurisdiction was found on facts quite similar to *Howells.* Hartling was a Superior, Wisconsin resident who dated Nylund, a Minnesota resident, regularly from July 1982 through mid-October 1982. The child was conceived in Wisconsin and most sexual intercourse occurred there. The court saw a parallel to *Howells,* however, in that a substantial portion of their relationship was developed in Minnesota: "They engaged in social and sexual activities here that furthered their relationship." *Id.* 360 N.W.2d at 441. In the present case, the court of appeals further distinguished *Hartling* by stating that in *Hartling* the "continuous, four month social and sexual relationship bore a direct relationship to the cause of action." *Kennedy,* 409 N.W.2d at 909–10. They also noted the contiguousness of the Duluth–Superior communities. *Id.* at 909, n. 2.

This court did not find personal jurisdiction, however, in the case of *Ulmer v. O'Malley,* 307 N.W.2d 775 (Minn.1981). Ulmer was a South Dakota defendant who had never been in Minnesota nor had any business or property interest in the state. *Id.* at 777. Whereas the Howells relationship was "developed in *significant* part in this state," *id.* (emphasis added), the Ulmer relationship occurred entirely in South Dakota:

> The child was conceived in South Dakota and the mother moved to this state when she was approximately 7 months pregnant. Defendant neither visited nor called her here. * * * Thus, *Howells* does not persuasively support, let alone require, that jurisdiction be exercised on these facts.

*Id.*

The present case falls between *Ulmer* and *Howells.* Pouliot and Kennedy had sexual intercourse for the first time in Minnesota. However, Pouliot alleges no facts establishing a continuing relationship.[2] Without some evidence of a continuous relationship, there seems to be no connection between Kennedy's contact with Minnesota on July 30 and Pouliot's cause of action. Furthermore, while a single contact with the state may be sufficient to establish jurisdiction, *Marquette Nat'l. Bank,* 270 N.W.2d at 295, the nature and quality of that contact must be such that the exercise of personal jurisdiction over the non-resident is reasonable. The United States Supreme Court has held that:

> [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.

*Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). *See Marquette Nat'l. Bank,* 270 N.W.2d at 296.

It might be argued that in having sexual intercourse with a Minnesota resident on the eve of his departure from the state, Kennedy was purposefully availing himself of the financial benefits of the state's welfare laws. However, under a Uniform Reciprocal Enforcement of Support Act proceeding, which does not require personal jurisdiction over the defendant by the initiating state, Kennedy could be obligated to pay child support regardless of where the mother and child lived.[3] Thus, under the limited facts we have here, neither the quantity or the nature of Kennedy's contacts with Minnesota, nor the connection of the July 30, 1983 contact with Pouliot's cause of action, would suffice to establish personal jurisdiction over Kennedy.

Nevertheless, Sherburne County argues that the minimum contacts test is satisfied because, as in *Howells,* it was "reasonably

---

2. Had Pouliot alleged such facts, they would have been taken as true for the purposes of a jurisdictional analysis. *West American,* 337 N.W.2d at 681. (Wahl, J., concurring specially).

3. Minnesota and Montana have both adopted the Revised Uniform Reciprocal Enforcement of Support Act which contains a provision allow-

ing paternity determinations. Minn.Stat. § 518C.18 (1986); Mont.Code Ann. § 40–5–128 (1987). This court has indicated a preference for a URESA proceeding in cases where jurisdiction is challenged. *Howells,* 281 N.W.2d at 159, n. 5.

foreseeable by defendant that a continued sexual relationship with plaintiff, a Minnesota resident, might result in the injury suffered by plaintiff and that those injuries would be sustained in this state." *Howells*, 281 N.W.2d at 157. After *Howells* was decided, however, the United States Supreme Court, in *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) held that foreseeability of impact or injury is no longer a valid basis for personal jurisdiction. The critical foreseeability in a due process analysis "is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567. A defendant cannot reasonably anticipate out-of-state litigation unless he has purposefully availed himself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (*quoting Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239–40).

In applying our five-factor test for determining minimal contacts, we find that: (1) Kennedy had no contacts with Minnesota after August 1st, 1983, several months before conception occurred; (2) The single contact he did have with Pouliot on July 30, 1983 would not lead one to reasonably anticipate being haled into a Minnesota court for alleged subsequent acts occurring outside of Minnesota; (3) Since Pouliot presented no facts alleging a continuing relationship between the parties between July 30 and the end of November, 1983, there is no connection between the July 30th incident and her cause of action; (4) Minnesota's interest in providing a forum is served equally well by a proceeding under the Revised Uniform Reciprocal Enforcement of Support Act. Minn.Stat. ch. 518C (1986); Mont.Code Ann. §§ 40–5–101 to 40–5–142 (1987); (5) Finally, since sufficient contacts for Kennedy have not been established, the relative convenience of one forum over another is not dispositive and will not be considered.

 We hold that minimum contacts do not exist between the non-resident defendant and the state of Minnesota sufficient to sustain the state's exercise of personal jurisdiction over defendant.

We affirm the decision of the court of appeals and remand the matter for dismissal.

Affirmed and remanded for dismissal.