**BROWN COUNTY FAMILY SERVICE CENTER and Deborah Seeboth, Appellants,**

v.

**Craig A. KAHOUN, Respondent.**

**No. C8–88–216.**

Court of Appeals of Minnesota.

Aug. 9, 1988.

Review Denied Sept. 28, 1988.

James R. Olson, Brown Co. Atty., New Ulm, for appellants.

Jeffrey C. Beinlich, McKay, Mohr & Beinlich, Green Bay, Wis., for respondent.

Considered and decided by WOZNIAK, C.J., and PARKER and FORSBERG, JJ., without oral argument.

## OPINION

WOZNIAK, Chief Judge.

This is an appeal from a trial court order granting respondent Craig Kahoun's motion to dismiss for lack of personal jurisdiction. Appellants Brown County Family Service Center and Deborah Seeboth claim respondent had sufficient minimum contacts with the state of Minnesota to support jurisdiction under Minnesota's long-arm statute, Minn.Stat. § 543.19, and the due process clause of the United States Constitution. We reverse and remand.

## FACTS

In April or May 1985, respondent Craig Kahoun and appellant Deborah Seeboth met in Eau Claire, Wisconsin. Seeboth is a Minnesota resident who attended school at the University of Wisconsin–Eau Claire. Kahoun is a resident of Green Bay, Wisconsin, has never resided in Minnesota, and owns no property in Minnesota. Shortly after the parties met, they began a sexual relationship.

Seeboth asserts that the parties engaged in sexual intercourse nightly until school ended on May 17, 1985. Kahoun disputes the regularity of that allegation. When school ended, Kahoun drove Seeboth from school to her home in New Ulm, Minnesota. He stayed the night and returned to Wisconsin the next day. The parties did not engage in sexual intercourse on this Minnesota visit. On May 28, Kahoun again returned to Minnesota to visit Seeboth for two or three days. Seeboth contends the parties engaged in sexual intercourse during his visit. Kahoun denies ever engaging in sexual intercourse with Seeboth in Minnesota.

From June 1 through June 28, Seeboth visited Kahoun in Wisconsin. While in Wisconsin, Seeboth's pregnancy was confirmed. Thereafter, plans were made for a wedding to take place on August 3, 1985. On June 28, however, Kahoun informed Seeboth that he did not want to go through with their wedding plans. The parties then terminated their two-month plus relationship, and Seeboth returned to Minnesota.

Sometime in August of 1985, the parties communicated by telephone. During this conversation, Kahoun offered to pay one-half of the costs of an abortion. On February 23, 1986, Seeboth gave birth to a daughter in Minnesota. She alleges that in April or May of 1986, Kahoun called her in New Ulm to "work things out." The parties then met in Wisconsin to discuss matters. Kahoun claims he never spoke with Seeboth on the telephone, and contends that the Wisconsin meeting was the result of a surprise visit by Seeboth.

Kahoun has repeatedly denied paternity. Seeboth submitted a blood test indicating the likelihood of Kahoun being the father is 99.897%. After reviewing the record, the trial court granted Kahoun's motion to dismiss for lack of personal jurisdiction.

## ISSUE

Do sufficient contacts with Minnesota exist to support a constitutional exercise of personal jurisdiction in a paternity action?

## ANALYSIS

Before a Minnesota court may exercise personal jurisdiction over a nonresident defendant, two criteria must be satisfied. First, there must be jurisdiction within Minnesota's long-arm statute, Minn.Stat. § 543.19 (1986). Second, there must be sufficient "minimum contacts" between the defendant and Minnesota such that the assertion of jurisdiction would not offend traditional due process notions of fairness. *Ulmer v. O'Malley,* 307 N.W.2d 775, 777 (Minn.1981).

The Minnesota Supreme Court has determined that civil proceedings to establish paternity involve tortious conduct within the meaning of the long-arm statute. *Id.; see also State ex rel. Nelson v. Nelson,* 298 Minn. 438, 216 N.W.2d 140 (1974).

In determining whether maintenance of an action is consistent with due process, the minimum contacts must be such that the defendant could "reasonably anticipate being haled into court" in Minnesota. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The pertinent factors to be considered in making the "minimum contacts" determination are: (1) the quantity of defendant's contacts with the state; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with those contacts; (4) the interest of the state in providing a forum; and (5) convenience to the parties. *Ulmer*, 307 N.W.2d at 777 (citing *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 294, 240 N.W.2d 814, 817 (1976)). We find Kahoun's contacts are sufficient to support the exercise of jurisdiction.

### Quantity of Contacts

Kahoun's contacts with Minnesota are limited to a few telephone calls and two overnight visits to Minnesota, one visit lasting two to three days. While Seeboth claims they engaged in sexual intercourse during the second Minnesota visit, Kahoun denies ever engaging in sexual intercourse while in Minnesota. When the quantity of contacts is minimal, the nature and quality of the contacts become dispositive. *Marquette National Bank v. Norris*, 270 N.W. 2d 290, 295 (Minn.1978).

### Nature and Quality of Contacts

Kahoun claims the quality of contacts is minimal because the parties' social and sexual activities were initiated, developed, and continued solely in the state of Wisconsin. However, the Minnesota Supreme Court has not hesitated to uphold the exercise of jurisdiction over a Wisconsin resident in a paternity action. *Howells v. McKibben*, 281 N.W.2d 154 (Minn.1979). In *Howells*, the parties met in Wisconsin, first engaged in sexual intercourse in Minnesota, and continued the sexual relationship in Wisconsin for approximately three months. The defendant visited the plaintiff's home in St. Paul on two occasions, and telephoned her during the pregnancy.

The *Howells* court found that the quantity and quality of the contacts with Minnesota were significant, and that a substantial portion of the relationship was developed in Minnesota. *Id.* at 157. The court also held:

> [I]t was certainly reasonably foreseeable by defendant that a continued sexual relationship with plaintiff, a Minnesota resident, might result in the injuries suffered by plaintiff and that those injuries would be sustained in this state.

*Id.*

In *State v. Hartling*, 360 N.W.2d 439, 441 (Minn.Ct.App.1985), this court also found sufficient contacts to support personal jurisdiction in a Minnesota paternity action. In *Hartling*, the plaintiff, a Minnesota resident, met the defendant, a Wisconsin resident, in Wisconsin. The parties initially engaged in sexual relations in Minnesota, but spent the majority of the three-month relationship together in Wisconsin. The only other Minnesota contact was when the defendant drove the plaintiff home to Duluth, Minnesota from Superior, Wisconsin after a date.

This court found that the parties initiated their sexual relationship in Minnesota, and engaged in social and sexual activities in Minnesota which furthered their relationship. *Id.* This court further ruled that the defendant knew the plaintiff was a Minnesota resident and thus reasonably could have foreseen she might conceive and hold him responsible for child support in Minnesota. *Id.*

Here, the parties' social and sexual relationship was initiated in Wisconsin. Although Kahoun claims they engaged in no sexual relations during the Minnesota visits, he did visit Minnesota overnight on two occasions. The relationship continued to develop during the Minnesota visits through the period Seeboth visited Kahoun in Wisconsin for over three weeks. While Kahoun claims he was unaware Seeboth was a Minnesota resident, he drove her from college to her home in New Ulm, Minnesota and visited a second time later that summer. Similar to *Howells* and *Hartling*, we find that Kahoun's actions and

his contacts with Minnesota are sufficient for him to have reasonably anticipated being haled into a Minnesota court for child support.

This case is distinguishable from recent paternity cases finding insufficient minimum contacts to support jurisdiction. *See Ulmer v. O'Malley,* 307 N.W.2d 775 (1981); *Sherburne County Social Services v. Kennedy,* 409 N.W.2d 907 (Minn.Ct.App.1987), *pet. for rev. granted* (Minn. Sept. 23, 1987). In *Ulmer,* the parties' relationship took place entirely in South Dakota, the plaintiff then moved to Minnesota, and the defendant had no contacts with Minnesota. In *Kennedy,* the defendant engaged in one isolated incident of sexual intercourse in Minnesota with a Minnesota resident, and then moved to Montana. Almost four months later, the Minnesota resident voluntarily visited the defendant in Montana, where the conception allegedly occurred. There was no continuing or ongoing relationship developed through Minnesota as in this case, only isolated contacts more closely related to Montana.

*Connection Between the Claim and the Contacts*

Although the sexual relationship allegedly occurred in Wisconsin, the Minnesota visits were part of a continuing and developing relationship between the parties which eventually resulted in Seeboth's pregnancy and the paternity action.

*Minnesota's Interest in Providing a Forum*

Minnesota has a particular interest in providing a forum for residents in paternity actions. *Howells,* 281 N.W.2d at 158. This interest not only is to protect Minnesota citizens, but to protect the state's own potential obligation of public support. *State ex rel. Nelson,* 298 Minn. 438, 442, 216 N.W.2d 140, 143 (1974).

*Convenience of the Parties*

The convenience of the parties balances the interests of the plaintiff in trying the case in a particular forum against the inconvenience to the nonresident defendant for having to defend in the plaintiff's forum. *Anderson v. Luitjens,* 311 Minn. 203, 210, 247 N.W.2d 913, 917 (1976). Unless the inconvenience to either party is extensive, this factor is not dispositive. *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir.1965).

Seeboth, the parties' daughter, the treating physicians, and the hospital which performed the blood test all are in Minnesota. Kahoun resides in the neighboring state of Wisconsin, and would not be significantly prejudiced by having to defend an action in Minnesota.

In the end, Kahoun's minimal contacts with Minnesota are sufficient such that he reasonably could have foreseen a sexual relationship with Seeboth could result in pregnancy and an action for child support in this state. The assertion of jurisdiction would not offend traditional due process notions of fairness.

### DECISION

The trial court erred in dismissing the case for lack of personal jurisdiction.

Reversed and remanded.