In re the Matter of Barb HUGHS on Behalf of Bryan PRAUL, Petitioner, Respondent,

v.

Gerald COLE, Appellant.

No. C6–97–870.

Court of Appeals of Minnesota.

Dec. 23, 1997.

Yancy A. Jancsok, Central Minnesota Legal Services, St. Cloud, for Respondent.

Scott Willis Shaw, Mary Elizabeth Smits, Shaw Law Firm, Brooklyn Center, for Appellant.

Considered and decided by WILLIS, P.J., and NORTON and SCHUMACHER, JJ.

## OPINION

NORTON, Judge.

Appellant contends the district court erred as a matter of law when it granted respondent's petition for a domestic abuse order. Appellant claims the evidence in the record fails to support an order for protection and, furthermore, the district court lacked personal jurisdiction. The record supports the district court's conclusion that it had personal jurisdiction over appellant. In addition, the evidence was sufficient to issue an order for protection. We affirm.

## FACTS

Appellant Gerald Cole and respondent Barb Hughes met in 1985 when respondent was already pregnant. They were living together in New Jersey when respondent gave birth to a son. The couple never married. After appellant and respondent separated, appellant petitioned the Superior Court of New Jersey to have himself declared the legal father of the boy, even though he was not the biological father. The court not only adjudged appellant to be the father of the child, it also granted him visitation rights during the months of June, July, and August.

After the court's decision, respondent moved to Ohio and appellant moved to Pennsylvania. From 1989 through 1996, the boy visited appellant every summer for three

months and during some holidays. Respondent and the boy eventually moved to Minnesota on November 28, 1996. Appellant still resides in Pennsylvania.

On February 18, 1997, respondent filed a petition for an order for protection on behalf of the boy. In respondent's affidavit and testimony, she described several occasions when appellant abused the child. Respondent indicated that, on June 26, 1995, the boy and his stepsister were arguing in their bedroom. Appellant came up to the bedroom and slapped the boy in the face three times. Appellant then proceeded to force the back of the boy's head into the bed. Also in June, appellant punched the boy's leg. Another incident occurred in July 1995. While riding in the car, the boy leaned up in between the two front seats and appellant elbowed him in the stomach, knocking the wind out of him. Allegedly, appellant said, "I hope you can't breathe." Later in July, appellant's mother-in-law backhanded the boy several times, causing his nose to bleed.

More incidents allegedly occurred during the summer of 1996. On June 19, appellant punched the boy in the arm when the boy went to answer the door. Finally, on or about the week of July 5, the boy accidentally rode his skateboard into appellant's car. Appellant proceeded to punch the boy in the back and slap him in the back of the head hard enough to knock the boy forward.

■ Respondent was aware of the abuse prior to the boy's visiting appellant in the summer of 1996. She testified, however, that she only let the 1996 visit occur because she thought the boy was staying with appellant's parents. Respondent testified that the boy told her about the incidents of abuse and threatened to run away if he were forced to spend another summer with appellant. Respondent also introduced a letter from a psychologist who interviewed the boy and recommended that he "remain in the care of his mother until more definitive information

can be ascertained." Nowhere in the record does appellant rebut the evidence.[1]

Appellant has never lived in Minnesota, does not own property in Minnesota, does not transact business in Minnesota, nor has he ever visited Minnesota. As a result, appellant served and filed a motion to dismiss for lack of personal jurisdiction. The district court denied the motion, finding the presence of the minor child in the State of Minnesota provided a sufficient jurisdictional basis. Furthermore, at the hearing on April 7, 1997, the district court found domestic abuse did occur and issued an order for protection on behalf of the child for the duration of one year.

## ISSUES

1. Did the district court err as a matter of law when it exercised personal jurisdiction over appellant?

2. Did the district court err as a matter of law in finding a factual basis to issue an order for protection against appellant?

## ANALYSIS

■ Determining whether personal jurisdiction exists is a question of law, which this court reviews de novo. *Welsh v. Takekawa*, 529 N.W.2d 471, 473 (Minn.App.1995). How far a state's long-arm statute extends is a question of state law, while how the statute is limited by due process is a question of federal law. *Stanek v. A.P.I., Inc.*, 474 N.W.2d 829, 832 (Minn.App.1991) (citing *Now Foods Corp. v. Madison Equip. Co.*, 386 N.W.2d 363, 366 (Minn.App.1986), *review granted and summarily vacated*, 395 N.W.2d 926 (Minn.1986)), *review denied* (Minn. Oct. 31, 1991).

Before the hearing on April 7, 1997, appellant brought a motion to dismiss for lack of personal jurisdiction under Minn. R. Civ. P.

---

1. Both appellant and his wife denied the allegations in written affidavits, except for the incident between the boy and the mother-in-law. Appellant's argument relies heavily on these affidavits. However, the court file does not contain the affidavits or list them as filed. Since the affidavits are not part of the record, we decline to

consider them. *See* Minn. R. Civ.App. P. 110.01 (record on appeal consists of papers filed in district court); *Mitterhauser v. Mitterhauser*, 399 N.W.2d 664, 667 (Minn.App.1987) ("[a]n appellate court cannot base its decision on matters outside the record.").

12.02(b).[2] The district court dismissed appellant's motion, finding that the presence of the minor child in the State of Minnesota provided a sufficient basis for issuing an order for protection.

Before Minnesota courts can exercise personal jurisdiction over a nonresident, two criteria must be met. First, Minnesota's long-arm statute must be satisfied. *Sherburne County Soc. Servs. v. Kennedy*, 426 N.W.2d 866, 867 (Minn.1988); *Stanek*, 474 N.W.2d at 832. Second, "minimum contacts" must exist between the defendant and this state in order to satisfy due process. *Sherburne County*, 426 N.W.2d at 867. In close cases, doubt should be resolved in favor of maintaining jurisdiction. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 412 (Minn.1992). In any case, however, the plaintiff bears the burden of proof. *Trident Enters. Int'l, Inc. v. Kemp & George, Inc.*, 502 N.W.2d 411, 414 (Minn.App.1993).

The legislature designed Minnesota's long-arm statute to extend Minnesota courts' personal jurisdiction as far as due process allows. *Valspar Corp.*, 495 N.W.2d at 410. Nevertheless, the court of appeals has interpreted the long-arm statute as a specific jurisdictional requirement, demanding that every claim in a lawsuit have its own ties to Minnesota. *Id.* Minnesota's long-arm statute provides, in relevant part, that "a Minnesota court may exercise personal jurisdiction over a nonresident defendant if that defendant commits an act outside of Minnesota causing injury in Minnesota." *Trident Enterprises*, 502 N.W.2d at 414 (citing Minn.Stat. § 543.19, subd. 1(d)).

In order for this statute to apply, it must be shown that the action is based upon a tort committed "in Minnesota." *Howells v. McKibben*, 281 N.W.2d 154, 156 (Minn.1979). For purposes of applying the long-arm statute, the standard for determining whether a tort is committed in Minnesota is whether damage from the alleged tortious conduct results in Minnesota. *Id.* According to *How-*

*ells,* emotional distress in Minnesota, caused by acts outside of the state, is sufficient to trigger the long-arm statute. *Id.* at 156–57.

In this case, the boy suffers emotionally and physically in Minnesota even though appellant's acts of physical abuse occurred in Pennsylvania. Respondent testified that the boy told her about the abuse and threatened to run away if he had to visit appellant for another summer. Furthermore, the psychologist indicated in her report that the boy seemed very "concerned, distraught, and distressed" over the possible upcoming visit to Pennsylvania. Because the boy suffers emotional distress in Minnesota as a result of acts committed in Pennsylvania, the Minnesota long-arm statute authorizes the district court to exercise personal jurisdiction.

Next, the Due Process Clause of the federal Constitution must be satisfied. The Due Process Clause of the United States Constitution requires that a defendant have "minimum contacts" with the foreign state such that maintaining jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) *quoted in Sherburne County*, 426 N.W.2d at 868. In other words, due process is satisfied if it is fair and reasonable to require defense of the action in the State of Minnesota. *Howells*, 281 N.W.2d at 157. Minnesota courts examine five factors: (1) the quantity of contacts within the State of Minnesota; (2) the nature and quality of those contacts; (3) the connection between the contacts and the cause of action; (4) the state's interest in providing a forum; and (5) the convenience of the parties. *Sherburne County*, 426 N.W.2d at 868. The first three factors are the most important, while the last two are given less consideration. *Mahoney v. Mahoney*, 433 N.W.2d 115, 118 (Minn.App.1988), *review denied* (Minn. Feb. 10, 1989).

Personal jurisdiction can be established by a single contact, in which case the nature and quality of the contact becomes "dispositive."

---

**2.** Respondent argues that, prior to challenging the district court's jurisdiction, appellant surrendered to the jurisdiction of the court by submitting written affidavits in response to the allega- tions in the order for protection. As previously stated, however, the affidavits are not part of the record.

*Sherburne County,* 426 N.W.2d at 868. On review, when this court analyzes the nature and quality of contacts, it must determine "whether the nonresident 'purposely availed' himself of the benefits and protections of Minnesota law." *Mahoney,* 433 N.W.2d at 118–19 (quoting *Dent—Air, Inc. v. Beech Mountain Air Serv., Inc.,* 332 N.W.2d 904, 907 (Minn.1983)).

For example, the court in *Howells* found that the quality and quantity of defendant's contacts with Minnesota were sufficient because a substantial portion of the defendant's relationship with the plaintiff developed in Minnesota. 281 N.W.2d at 157. The defendant visited the plaintiff numerous times in Minnesota, and they had sexual relations in Minnesota. *Id.* Also, defendant made repeated phone calls to plaintiff's home. *Id.* Furthermore, it was reasonable for the defendant to anticipate that his actions could possibly lead to consequences arising in Minnesota. *Id.* These facts, taken together, show that the contacts were significant.

In *Sherburne County,* however, the supreme court held that a putative father's contacts with Minnesota were insufficient to maintain a paternity suit on behalf of the child who resided in Minnesota. 426 N.W.2d at 870. According to the facts in *Sherburne,* conception did not take place in Minnesota, the mother voluntarily traveled to Montana to have relations with the father, the father did not have a continuing relationship with the mother, and the father had no other contacts with Minnesota other than the allegation that he fathered the child of a Minnesota resident. *Id.* at 867.

While appellant may not have a plethora of contacts in Minnesota, like *Howells,* the facts show the contacts are significant. The record indicates appellant made repeated telephone calls to respondent's home. Furthermore, appellant may have reasonably assumed that, because the boy was living in Minnesota, it might result in custody or visitation matters being dealt with by the Minnesota courts. More importantly, unlike

*Sherburne,* appellant has a continuing relationship with his son. Finally, what is at issue in this case is not paternity; the issue is domestic abuse of a minor.

Next, this court must consider the relationship between the contacts and the cause of action. In this case, the issue and the contact are directly related. Appellant is challenging an order for protection against him as a result of abuse against his son. Appellant's contact in Minnesota is his son. Appellant could foresee possible consequences resulting from this abuse. Moreover, since the boy lives in Minnesota, it is foreseeable that consequences could arise here.

The fourth element involves the state's interest in providing a forum. "Minnesota has a strong interest in providing a forum for its own residents." *Howells,* 281 N.W.2d at 158. Arguably, this interest is even stronger when the issue involves domestic abuse. In this case, respondent is attempting to protect her son from an abusive father. This state has a vested interest in enabling respondent to do so. *Lundman v. McKown,* 530 N.W.2d 807, 818 (Minn.App.1995) ("Minnesota has a compelling interest in protecting the welfare of children"), *review denied* (Minn. May 31, 1995), *cert. denied,* —— U.S. ——, ——, 116 S.Ct. 814, 828, 133 L.Ed.2d 759, 770 (1996).

Finally, although appellant argues it would be inconvenient for him to try this case in Minnesota, "this factor is not dispositive when the inconvenience is not extensive." *Trident Enters.,* 502 N.W.2d at 416. Here, the inconvenience is minimal because the issues involve the same facts, witnesses, and documents.

While appellant's only contact with Minnesota is his son, this is enough to satisfy the minimum contacts requirement in this case. As a result, the trial court did not err as a matter of law when it exercised personal jurisdiction over appellant.[3]

■ Appellant's final argument is that the evidence in the record is insufficient to

3. Appellant also claims that the district court does not have jurisdiction under the Domestic Abuse Act because it lacks jurisdiction over the parties' dissolution action. However, this argument improperly links the Marriage Dissolution Act with the Domestic Abuse Act. The Domestic Abuse Act is complete in itself; therefore, when analyzing it, the court need not refer to other statutes. *Baker v. Baker,* 494 N.W.2d 282, 285 (Minn.1992).

support a protective order. The Domestic Abuse Act is the vehicle that allows a person to petition the district court for an order for protection. Minn.Stat. § 518B.01, subd. 4 (1996). Domestic abuse is defined as "physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members." *Swenson v. Swenson*, 490 N.W.2d 668, 670 (Minn.App.1992) (citing Minn.Stat. § 518B.01, subd. 2(a)). In order to secure relief under the statute, appellant must either intend present harm, or inflict fear of present harm. *Andrasko v. Andrasko*, 443 N.W.2d 228, 230 (Minn.App.1989). When a petition asserts a fear of further acts of violence and is accompanied by a supporting affidavit, the requirements of the Domestic Abuse Act are met. *Baker v. Baker*, 494 N.W.2d 282, 287 (Minn.1992).

Appellant's present intent to harm or inflict fear of harm is satisfied. Just because appellant lives in Pennsylvania does not mean the boy feels safe. During each of the last two summer visits with appellant, the district court found the boy was abused. Allegations of abuse were discussed extensively at the hearing. Furthermore, respondent testified in detail to acts of violence committed by appellant against the boy. It was reasonable for the district court to assume that sending the boy to visit appellant during the summer of 1997 would result in further abuse. As a result, the present intent to harm element under the Domestic Abuse Statute is satisfied.

Next, this court recognizes that the evidence submitted to the district court was minimal, but the evidence was not rebutted. At the hearing, respondent testified appellant elbowed the boy in the stomach, punched him, left bruises on his arms and leg, and forced the back of the boy's head into the bed. Respondent also listed these incidents with particularity in the supporting affidavit. Furthermore, the psychologist stated in her report that the boy seemed very "concerned, distraught, and distressed" over the possible upcoming visit to Pennsylvania. Finally, respondent testified that the boy told her about the incidents of abuse and threatened to run away if he were forced to visit appellant for another summer.

Appellant, on the other hand, failed to submit any evidence to rebut these allegations. Appellant failed to deny the allegations on the record. He failed to object to the admittance of the psychologist's report. In addition, he failed to present any witness testimony on his behalf.

Since appellant failed to rebut the minimal evidence presented, the district court was justified in finding abuse. Therefore, the district court did not err in issuing an order for protection.

### DECISION

The record supports the district court's findings that it had personal jurisdiction over appellant by way of Minnesota's long-arm statute and minimum contacts. Furthermore, the record contains sufficient evidence to support a claim of domestic abuse and issuance of an order for protection.

**Affirmed.**